LA CLAW, Plaintiff in error, v. STATE, Defendant in error.*

*No. State 59. Argued December 3, 1968.—Decided December 20, 1968.*
(Also reported in 163 N. W. 2d 147, 165 N. W. 2d 152.)

---

* For disposition of motion on rehearing, see post, p. 187a.

180

For the plaintiff in error there were briefs by *Thomas M. Anich* of Ashland, attorney, and *Roy T. Traynor* of Wausau of counsel, and oral argument by *Mr. Anich.*

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *Bronson C. La Follette,* attorney general, *William A. Platz,* assistant attorney general, and *Alex J. Raineri,* district attorney of Iron county.

HEFFERNAN, J.   The defendant's principal contention is that the court erred in permitting the introduction of the defendant's statement without a separate and prior determination by the court on the issue of voluntariness.

It is clear that the standards for determining voluntariness as prescribed by *State ex rel. Goodchild v. Burke* (1965), 27 Wis. 2d 244, 133 N. W. 2d 753, and *Jackson v. Denno* (1964), 378 U. S. 368, 84 Sup. Ct. 1774, 12 L. Ed. 2d 908, 1 A. L. R. 3d 1205, were not complied with.

Prior to the introduction of the defendant's statement, her attorney objected to its introduction on the basis that there "has not been a complete and thorough examination by the court . . . as to the voluntariness." When the court said that the statement would be admitted, it raised the question in defense counsel's mind whether it was being admitted as a confession or as an admission. In response to counsel's question, the trial judge stated, "I don't designate it one way or the other now, because I haven't read it." It is apparent that the trial judge made no determination as to voluntariness and left that entire question to the jury. Not only must there be a separate finding of the court that a statement is voluntary but also the fact that such a finding was made must be apparent in the record. *Boles v. Stevenson* (1964), 379 U. S. 43, 85 Sup. Ct. 174, 13 L. Ed. 2d 109. The district attorney was then permitted to read the statement of Ann La Claw to the jury. The following is the excerpt from the testimony as it appears in the transcript:

" 'My name is Ann La Claw. I'm 38 years old. I live at 208 E. Michigan Avenue. I was with Clyde Newman at 11 o'clock on the night of June 5th, 1963. We got into my car and Clyde was driving and we drove Mary Rozga to her home in Ironwood. We left her off then we were going into Lens Dairy Store and have pop. I said if we were going to Woodruff let's get started right away. Clyde said on second thought I don't want you to drive me back because I don't want you to drive back alone. I said O.K. good I don't feel good anyway so instead we went and had a beer at the Town Pump at 11:30 P. M. We talked to Elie Steppa about some book he was reading. I had finished a part of a tall bottle of beer and Clyde drank 2 bottles of beer. We weren't drunk. We left the Town Pump at 12:30. We got into the car and Clyde was driving and we drove to my apartment in Ironwood. We went to my apartment. I remember he kissed me goodnight and I went to the bathroom. When I came from the bathroom he was gone. But Clyde must have come back and asked me to drive him to Woodruff. So

I must have got into the car and Clyde sitting beside me we drove off. I can't remember what route we took to Hurley but we went down U. S. 51. When we got 2 miles South of Hurley going around the curve Clyde fell out the door. I kept on driving. I don't know how I got home. But I was at home in bed when the telephone rang telling me about Clyde's accident. Ellen Vitich called me and said Ann I got bad news for you. Clyde is a victim of hit and run. I asked her is he dead. I dressed right away and got into my car. The first person I saw was the nurse and I asked is Clyde Newman here. She said yes. The police officers came and took me into emergency. The nurse and the officers asked if Clyde was my husband and I said no. The officers left and said they wanted to talk to me later. I went and got a drink of water then the nurse said I could go if I want to. She was a dark-haired nurse. I went outside walked around for a while drove down to the intersection turned around and went back to the hospital. I don't know how or when but I then disposed of the shoes at the creek on Sunset road. Then I went back to the hospital. After that I came back to the Sheriff's office. I had Clyde's saw and the rest of Clyde's clothing.'

" 'I make this statement of my own free will—it consists of 2½ half pages. I swear everything in this statement is the truth. I was not promised anything or threatened with any harm by any of the police officers to whom I gave this statement. I know I do not have to sign this statement. I am advised that anything I say in this statement *can't* be used as evidence in a court of law. [Emphasis supplied.] I am free to call an attorney before signing this statement.'

" 'Dated at Hurley, Wis.
" 'June 20, 1963.

" 's/ Ann La Claw

" 's/ Louis Oberto
    Deputy Sheriff.
" 's/ James J. Thomas,
    Sheriff, Iron County."

"Added to this statement on the margin: 'I give this statement on condition be given to anyone for the purpose of suing me for damages or money.' "

We conclude that the admission of this statement without a prior determination of voluntariness constitutes

error under *Goodchild, supra,* and *Denno, supra.* The rule of those cases requires that the court make a separate finding of voluntariness following a hearing not in the presence of the jury.

In the instant case to conclude that the *Goodchild* rule is applicable we need not apply the rule retrospectively, for this conviction is now before us on direct review by writ of error, and the question of whether or not a rule of criminal procedure is to be applied retrospectively arises only for causes that have been finalized. In *State ex rel. La Follette v. Raskin* (1966), 30 Wis. 2d 39, 48, 139 N. W. 2d 667, we stated the cases were finalized only when "there has been a judgment of conviction, sentence and exhaustion of rights of appeal." This cause has not reached the stage of finalization.

We also point out that the trial court's procedure in respect to this statement failed to comply with the approved pre-*Goodchild* practice in this state. That practice is outlined in *State v. Bronston* (1959), 7 Wis. 2d 627, 97 N. W. 2d 504, 98 N. W. 2d 468, *Pollack v. State* (1934), 215 Wis. 200, 253 N. W. 560, 254 N. W. 471, and *Bosket v. State* (1966), 31 Wis. 2d 586, 143 N. W. 2d 553.

In *Bosket,* at page 589, the pre-*Goodchild* procedure was described by Mr. Chief Justice CURRIE:

"Before this evidence was offered a hearing was conducted by the trial court in the absence of the jury to determine whether the confession and other admissions by defendant were so clearly involuntary as to require that they be excluded. After taking testimony at this hearing the trial court concluded that the confession and other admissions should not be excluded but that the issue of their voluntariness should be submitted to the jury. . . .

"This manner of handling the issue of voluntariness of a confession or admission by a defendant in a criminal prosecution was in accordance with decisions of this court prior to *State ex rel. Goodchild v. Burke.*"

It is apparent that the failure to hold a proper hearing on the question of voluntariness was prejudicial to the

rights of the defendant to have a fair trial. In *Linkletter v. Walker* (1965), 381 U. S. 618, 638, 85 Sup. Ct. 1731, 14 L. Ed. 2d 601, in footnote 20, the court points out that the absence of a proper *Jackson v. Denno* hearing "went to the basis of fair hearing and trial because the procedural apparatus never assured the defendant a fair determination of voluntariness."

In *Roberts v. Russell* (June 10, 1968), 392 U. S. 293, 88 Sup. Ct. 1921, 20 L. Ed. 2d 1100, it was pointed out that *Jackson v. Denno* referred to a rule of criminal procedure " 'fashioned to correct serious flaws in the factfinding process at trial.' "

It is apparent that the statement was highly prejudicial to the defendant, since it provided the connecting link which purported to place Ann La Claw at the scene when Newman sustained his fatal injuries. It is manifest from the facts of record that serious questions were raised as to the voluntariness of the statement which required a hearing and prior determination of the trial judge.

We are satisfied that the admission of this statement under these circumstances seriously infected the fact-finding process and was prejudicial to the defendant. Because of this error, we are satisfied that a new trial should be held, in which a determination of voluntariness is made in accordance with the standards laid down by *Goodchild v. Burke.*

*By the Court.*—Judgment reversed and the cause is remanded to the trial court to allow the state a reasonable time to afford Ann La Claw a new trial, failing which, Ann La Claw is entitled to her discharge and release.

The following memorandum was filed March 4, 1969.

PER CURIAM (*on motion for rehearing*). The state has asked that this court change its mandate to one ordering an evidentiary hearing on the voluntariness of the statement made by the defendant and used at her trial.

In the alternative, the state has requested that, if this court determines that the total circumstances of this case warrant, it order a reversal in the interest of justice rather than order a reversal and a new trial on the basis of error in the admission of the defendant's statement. The defendant also urges that the mandate be changed to one ordering complete discharge and release.

We agree that the mandate should be changed. In its opinion, this court noted not only that the statement was not subjected to a *Goodchild* hearing, but that it also seriously infected the entire fact-finding process. However, even considering the statement as evidence, regardless of whether it was voluntary, there was not evidence which adduced, believed, and rationally considered by the jury was sufficient to prove beyond a reasonable doubt that the defendant was guilty of second-degree murder. In fact, the record clearly shows that the trial was conducted upon the theory that the defendant was obligated to prove her innocence.

Accordingly, a new trial, rather than promoting justice, would subject the defendant to undue hardship and the state to possible challenges for unconstitutionally subjecting the defendant to second jeopardy. Since from the total circumstances of this case as revealed by the record, it appears that a new trial would probably result in the defendant's acquittal, this court, in the interest of justice, concludes that the defendant is entitled to her immediate discharge and release from the supervision of the Department of Health & Social Services.

The mandate is amended to conform with this opinion.

*By the Court.*—Judgment reversed.

Mr. Justice ROBERT W. HANSEN dissents from the change of mandate.