## STATE of Wisconsin, Plaintiff-Appellant-Petitioner,

v.

## Oliver Ross JOHNSON, Defendant-Respondent.

Supreme Court

*No. 84-2143-CR. Argued September 5, 1986.—Decided October 29, 1986.*

(Also reported in 395 N.W.2d 176.)

For the plaintiff-appellant-petitioner the cause was argued by *Barry M. Levenson*, assistant attorney general, with whom on the briefs was *Bronson C. La Follette*, attorney general.

For the defendant-respondent there was a brief by *Gary M. Luck, Joel H. Rosenthal*, of counsel, and *Luck & Rosenthal, S.C.*, Milwaukee, and oral argument by *Mr. Luck*.

WILLIAM G. CALLOW, J. The state seeks review of a published decision of the court of appeals, *State v. Johnson*, 126 Wis. 2d 8, 374 N.W. 2d 637 (Ct. App. 1985), affirming an order of the circuit court for Milwaukee county, Judge Robert W. Landry, which set aside a judgment of conviction for first-degree murder, vacated the defendant's sentence of life imprisonment, and ordered a new trial.

This appeal presents two issues. First, was the defendant denied his right to effective assistance of counsel under the United States and Wisconsin Constitutions by the failure of his attorney to inform the court

that he had received letters from defense experts which raised a reason to doubt the defendant's competence to stand trial? Second, if Johnson was denied effective assistance of counsel, is he entitled to a new trial on the merits, or must the trial court first determine his competency nunc pro tunc, if such a determination can be meaningfully made? We agree with the court of appeals and the circuit court that the defendant was denied his federal constitutional right to the effective assistance of counsel. However, because we conclude that a new trial is necessary only if a meaningful retrospective (nunc pro tunc) hearing is impossible, we remand the cause to determine if such a hearing is possible. Should a retrospective hearing be impossible, the defendant is entitled to a new trial.

The facts underlying Johnson's claim of ineffective counsel are not at issue. On July 21, 1983, the defendant, Oliver Ross Johnson, was convicted of first-degree murder for the stabbing death of Debra White. On April 24, 1984, Johnson brought a post-conviction motion claiming ineffective assistance of counsel.

Attorney David Kagan-Kans was appointed trial counsel for Johnson. To assist in the preparation of his client's defense, Kagan-Kans retained two experts to examine Johnson, Dr. William J. Crowley, a psychiatrist, and Kenneth H. Smail, Ph.D., a clinical psychologist. Dr. Crowley conducted psychiatric interviews with Johnson on April 20, 1983, June 19, 1983, and July 5, 1983. Dr. Smail met with Johnson to evaluate Johnson's psychological functioning on November 26 and 27, 1982, March 7, June 16, July 6, and July 9, 1983. Dr. Smail also reviewed his notes from interviews with Johnson on November 23 and 24, 1982, which were held to assess Johnson's potential for suicide.

Drs. Crowley and Smail were initially retained to evaluate Johnson for a post-traumatic stress disorder defense. After the examinations and consultations with Drs. Crowley and Smail, Kagan-Kans decided not to pursue this defense. Instead, he decided to focus on the intent element of the crime and to argue that Johnson was suffering from a dissociative reaction and that he had acted in the heat of passion.

After a pretrial disagreement with Johnson concerning whether to request a lesser included offense jury instruction, Kagan-Kans requested that Drs. Crowley and Smail evaluate Johnson regarding his competency to stand trial. Shortly thereafter, on July 7, 1983, Dr. Smail wrote to Kagan-Kans and informed him that, "I have serious concerns regarding his [Johnson's] competency to stand trial, although I am unable to offer you a conclusion vis-a-vis s. 971.14(2) because my status as a defense appointed psychologist would be in conflict with my employment at the Forensic Unit." In conclusion, Dr. Smail wrote, "[i]t is my belief that Mr. Johnson's thinking impinges on his ability to rationally aid in the preparation of his defense in an adversarial setting."

On July 11, 1983, Dr. Crowley wrote to Kagan-Kans, advising him that he had "serious doubts about his [Johnson's] competency to stand trial." However, Dr. Crowley, who was also employed by the Milwaukee County Forensic Unit, did not offer a definitive opinion regarding Johnson's competency because of Dr. Crowley's belief that to do so would be a conflict of interest. Dr. Crowley specifically recommended that Kagan-Kans raise the issue of competency with the court. We find nothing in the letters from Drs. Crowley and Smail to indicate that the scope of the evaluation of the mental competency of Johnson was limited in any way.

212

On July 12, 1983, Johnson moved the court for substitution of counsel because of differences he had with Kagan-Kans on the choice of a proper defense. This motion was denied. The prosecution then raised the question of Johnson's competency to stand trial. Kagan-Kans responded that neither he nor Johnson were raising the competency issue. Attorney Kagan-Kans, with knowledge of the letters written by Drs. Crowley and Smail, added: "I will, of course, if any competency issue arises, bring it to the Court's attention I think when it arises and certainly not—I would be remiss in my responsibilities to do otherwise." Johnson then affirmed to the court their decision not to raise the competency issue. Kagan-Kans did not disclose to the court the existence of the letters at the time he was questioned concerning a potential competency issue.

On July 13, 1983, the day after the hearing on substitution of counsel, Dr. Crowley sent Kagan-Kans a second letter, this time describing his psychiatric evaluation of the defendant. The letter was based upon three interviews with the defendant, including one on July 5, 1983. Dr. Crowley described Oliver Ross Johnson as "a 35 year-old, slim, soft-spoken, Black male who was alert, oriented, and who cooperated with all interviews to the best of his ability." The July 13 letter made no reference to Dr. Crowley's earlier concerns about Johnson's competency to stand trial.

On July 14, 1983, two days after the hearing, Dr. Smail sent a second letter to Kagan-Kans reporting the results of his psychiatric examination of the defendant, made for the purpose of evaluating a possible defense of lack of mental responsibility or capacity to form intent. Dr. Smail related that Johnson was a "primary source of relevant information." The July 14 letter made no refer-

ence to Dr. Smail's previously stated concerns about Johnson's competency to stand trial.

At the August 15, 1984, postconviction hearing on the defendant's sixth amendment claim, Kagan-Kans explained to the court that he had been concerned about his client's mental condition and asked Drs. Crowley and Smail to look at the competency issue. He explained to the court that he felt it was his strategic decision not to raise the competency issue and articulated two bases for the decision.

First, because he planned to introduce psychiatric evidence in support of a dissociative reaction/heat of passion defense, Kagan-Kans did "not want to provide the state the opportunity for the state to have Oliver [Johnson] examined by their forensic experts," thereby risking rebuttal of the defense experts' testimony. The defense experts' testimony concerning the dissociative reaction/heat of passion defense was subsequently held inadmissible by the trial court, consistent with Wisconsin case law. *See Steele v. State*, 97 Wis. 2d 72, 97-98, 294 N.W. 2d 2 (1980).

The second basis for Kagan-Kans' decision not to raise the competency issue was his own assessment based on sec. 971.13, Stats., that Johnson was competent, at least with respect to those areas which Kagan-Kans thought Johnson needed to be competent. Kagan-Kans testified at the postconviction hearing that he had analyzed the competency issue in terms of what, if any, decisions the defendant's mental impairment would affect. Kagan-Kans reasoned that, if the mental impairment only affected those decisions which ultimately resided with counsel, the degree of impairment would have to be significantly greater for the defendant to be found incompetent as compared to situations where the

impairment involved decisions which the client controls. Since the court had ruled that the decision to request a lesser included offense instruction was for the attorney, Kagan-Kans decided he need not raise the competency issue. He indicated that, if Johnson had chosen not to testify in his own defense, a decision which rests solely with the defendant, he would have sought a competency determination. However, because Johnson did agree to testify, it was unnecessary to do so.

Although Drs. Crowley and Smail were present at the post-conviction hearing, neither testified concerning their evaluation of Johnson's competency to stand trial because Johnson refused to waive his physician-patient privilege.

The circuit court determined that Johnson had been denied effective assistance of counsel, set aside his conviction, vacated his sentence, and ordered a new trial. The court held that, under sec. 971.14, Stats., the determination of competency rested with the court exclusively, not with the attorney. According to the court, notwithstanding Kagan-Kans' rationale for not raising the competency issue, it was a breach of the duty of the defendant's attorney to fail to inform the court about the letters questioning the defendant's competency to proceed.

The court of appeals, in applying the two-pronged test of *Strickland v. Washington*, 466 U.S. 668, *reh'g denied*, 467 U.S. 1267 (1984), affirmed the trial court's decision. *State v. Johnson*, 126 Wis. 2d 8, 374 N.W. 2d 637 (Ct. App. 1985).

Johnson, in claiming ineffective assistance of counsel, makes reference to the sixth and fourteenth amendments of the United States Constitution and art. I, sec.

7 of the Wisconsin Constitution. In analyzing Johnson's claim, we therefore turn to the sixth and fourteenth amendments of the United States Constitution and the relevant decisions of the United States Supreme Court. When this court interprets a provision of the federal constitution, we are bound by the interpretations which the United States Supreme Court has given that provision. *State v. Pitsch*, 124 Wis. 2d 628, 632, 369 N.W. 2d 711 (1985).

According to the United States Supreme Court, "the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). Whether counsel's actions constitute ineffective assistance is a mixed question of law and fact. *Strickland*, 466 U.S. at 698. The trial court's determinations of what the attorney did, or did not do, and the basis for the challenged conduct are factual and will be upheld unless they are clearly erroneous. *Pitsch*, 124 Wis. 2d at 634. However, " '[t]he ultimate conclusion of whether the attorney's conduct resulted in a violation of the right to effective assistance of counsel is a question of law,' " and we do not give deference to the trial court's decision. *State v. Ludwig*, 124 Wis. 2d 600, 607, 369 N.W. 2d 722 (1985) [quoting *State v. Felton*, 110 Wis. 2d 485, 505, 329 N.W. 2d 161 (1983)].

The United States Supreme Court, in *Strickland v. Washington*, set forth a two-pronged test for determining whether an attorney's assistance was so defective as to violate a defendant's constitutional rights. Under this test a defendant must show the following:

> " 'First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was

not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trail, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.' " *Ludwig*, 124 Wis. 2d at 607–08 (citing *Strickland*, 466 U.S. at 687).

We must first determine whether the performance of Johnson's counsel was deficient. According to *Strickland*, a defendant must show that "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. In an ineffective assistance of counsel case, a court,

"must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

In this case the defendant argues that counsel's failure to raise the competency issue, in light of the letters from Drs. Crowley and Smail, constituted representation which fell below an objective standard of reasonableness. The state contends that counsel's decision not to raise the competency issue did not constitute deficient performance but, rather, was a reasonable strategic decision, made after a thorough investigation of the law and the facts.

In determining whether counsel's representation "fell below an objective standard of reasonableness," we must ascertain the question of doubt which must exist before a trial counsel is required to raise the issue of competency.[1] This court has not previously attempted to promulgate such a standard. Section 971.13(1), Stats., states that "[n]o person who lacks substantial mental capacity to understand the proceedings or assist in his or her own defense may be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures." Section 971.14, sets out special procedures by which a defendant's competency is detemined by the court and mandates that "[t]he court shall proceed under this section whenever there is *reason to doubt* a defendant's competency to proceed." Sec. 971.14(1)(a). (Emphasis added.) The procedure spelled out by sec. 971.14 is "a critically important fail-safe device for the benefit of accused persons who may not be able to fully

---

[1] The defense of incompetency to stand trial cannot be waived by the incompetent. *See Pate v. Robinson*, 383 U.S. 375, 384 (1966). It inevitably follows from this that "his counsel cannot waive it for him by failing to move for examination of his competency." *Kibert v. Peyton*, 383 F. 2d 566, 569 (4th Cir. 1967). Thus the question of effective assistance of counsel involves a determination of the point at which counsel is required to raise the issue of incompetency.

cooperate and assist in their defense." *State ex rel. Matalik v. Schubert*, 57 Wis. 2d 315, 322, 204 N.W. 2d 13 (1973). Section 971.14 provides only that a *court* must act when it has reason to doubt defendant's competency; the statute does not delineate when *counsel* must act.

Other courts, in delineating when *counsel* must act, have held that defense counsel must bring the issue of competency to the trial court's attention where there is "reasonable doubt," *see Kibert v. Peyton*, 383 F. 2d 566, 569 (4th Cir. 1967); *Owsley v. Peyton*, 368 F.2d 1002 (4th Cir. 1966), or "substantial doubt," *Speedy v. Wyrick*, 702 F. 2d 723, 726 (8th Cir. 1983), as to the competency of the defendant. In addition, the fourth circuit, in discussing a statute similar to sec. 971.14, Stats., noted that "[t]he protection afforded the defendant by this legislation is illusory, however, if, when a *reasonable doubt* as to his sanity arises, neither court nor *counsel* seeks to utilize the procedures provided by the state for determining competency." *Kibert*, 383 F. 2d at 569. (Emphasis added.)

Furthermore, the United States Supreme Court has held that, "[w]here the evidence raises a *'bona fide* doubt' as to a defendant's competence to stand trial, the judge on his own motion must impanel a jury and conduct a sanity hearing." *Pate v. Robinson*, 383 U.S. 375, 385 (1966).

Several states have adopted the "reasonable doubt"[2] standard as to when a counsel must raise the

---

[2] A finding of " 'no reasonable doubt' as to the defendant's competency to proceed is tantamount to a finding that there is no 'reason to doubt' the defendant's competency to proceed." *State v. McKnight*, 65 Wis. 2d 582, 595–96, 223 N.W. 2d 550 (1974).

issue of competency. Section 971.14, Stats., in specifically designating the conduct required of a trial judge, mandates a determination of competency when there is a "reason to doubt." We hold that, where defense counsel has a reason to doubt the competency of his client to stand trial, he must raise the issue with the trial court. The failure to raise the issue of competency makes the counsel's representation "[fall] below an objective standard of reasonableness." We conclude, under the specific facts of this case, that defense counsel's performance fell below an objective standard of reasonableness and, hence, was deficient.

■ In this case Kagan-Kans had reliable evidence which created a reason to doubt Johnson's competency to stand trial. Dr. Smail's letter to defense counsel said: "I have serious concerns regarding his [Johnson's] competency to stand trial." In addition, Dr. Smail stated, "It is my belief that Mr. Johnson's thinking impinges on his ability to rationally aid in the preparation of his defense in an adversarial setting." Kagan-Kans also received a letter from Dr. Crowley which said: "I have serious doubts about [Johnson's] competency to stand trial." Dr. Crowley went on to note that there were serious problems regarding Johnson's capacity to reasonably and rationally confer with defense counsel in his defense. Dr. Crowley then advised Kagan-Kans to raise the issue of competency with the court. We conclude that these letters create a reason to doubt Johnson's competency to stand trial.

The second letters written by Drs. Crowley and Smail do not negate the doubts concerning Johnson's competency which were raised in the first letters. Having already voiced their doubts as to Johnson's compe-

tency, Drs. Crowley and Smail concluded that they were prohibited, by concerns with conflicts of interest, from further discussing Johnson's competency to stand trial. We note that Kagan-Kans had received only the first letters by the time of the substitution of counsel hearing; thus, his reason to doubt was certainly unimpaired at that time. Because we find that Kagan-Kans had, or should have had, a reason to doubt Johnson's competency to stand trial, we hold that Kagan-Kans' performance was deficient.

The state argues that defense counsel's strategic decision not to raise a competency question should be honored by this court. Although the fifth circuit has recently held that defense counsel may, for tactical reasons, decide not to request a competency hearing, *Enriquez v. Procunier*, 752 F. 2d 111, 114 (5th Cir. 1984), *cert. denied*, — U.S. —, 105 S. Ct. 2658 (1985), we decline to follow the fifth circuit's conclusion. We believe that considerations of strategy are inappropriate in mental competency situations. Thus, we hold that strategic considerations do not eliminate defense counsel's duty to request a competency hearing.

This is the first time that this court has resolved (1) the point at which defense counsel is required to raise the issue of competency, and (2) whether strategic considerations may eliminate counsel's duty to request a competency hearing. Accordingly, these rulings shall have prospective effect only, except that these rulings shall apply to this case and to other cases which have not been finalized on the date of the release of this opinion. For a case to be finalized, there must be a judgment of conviction, sentence, and exhaustion of

rights of appeal. *La Claw v. State,* 41 Wis. 2d 177, 187, 163 N.W. 2d 147, 165 N.W. 2d 152 (1968). The prospective application of today's rulings is limited to a defendant's claim of ineffective assistance of counsel. Thus, our decision does not impair the right of a defendant to attack the validity of a conviction because the defendant was incompetent at the time of trial.

We now turn to the second prong of the *Strickland v. Washington* test—did defense counsel's deficient performance prejudice the defense? According to *Strickland,* a counsel's performance prejudices the defense when the "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." 466 U.S. at 687. The Court stated that, while it is not enough for the defendant to show that the counsel's errors had some conceivable effect on the outcome of the proceedings, neither must the defendant show that trial counsel's conduct more likely than not altered the outcome of the case. *Id.* at 693. The Court, in focusing on the reliability of the proceedings, rejects an "outcome-determinative standard." *Id.* at 694. According to *Strickland,* " '[a]n ineffective assistance claim asserts the absence of one of the crucial assurances that the result of the proceeding is reliable . . . . The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.' " *State v. Pitsch,* 124 Wis. 2d at 642 (quoting *Strickland,* 466 U.S. at 694). Thus the Court stated the following test for prejudice: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to

undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

However, as the United States Supreme Court noted, "the principles we have stated do not establish mechanical rules." *Id.* at 696. "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Id.*

The state argues that, under *Strickland*, Johnson must show there was a reasonable probability that he was incompetent. According to the state, the mere showing that Johnson would have received a hearing does not "undermine confidence in the outcome" of the trial. We disagree. Where counsel fails to bring the issue of competency to the court's attention, and there is reason to doubt the defendant's competence to stand trial, the defendant is deprived of a fair trial, thereby undermining confidence in the outcome.

We start with the proposition that an incompetent may not be subjected to a trial. *Drope v. Missouri*, 420 U.S. 162, 171 (1975). A trial judge, on his own motion, must conduct a competency hearing where the evidence raises a *"bona fide* doubt" as to a defendant's competence to stand trial. *Pate*, 383 U.S. at 385. The Wisconsin statutes provide that the judge must conduct a competency hearing when there is "reason to doubt" a defendant's competency to stand trial. Sec. 971.14(1)(a), Stats. The failure to hold such a hearing deprives the defendant of his constitutional right to a fair trial. *Pate*, 383 U.S. at 385. When a defense counsel fails to bring evidence of a client's incompetence to the court's attention, the court is deprived of the evidence necessary to determine whether a competency hearing is required. It

follows then that, where the evidence withheld is sufficient to raise a bona fide doubt (reason to doubt) as to the defendant's competence, the failure to present this information to the court deprives the defendant of his or her constitutional right to a fair trial. This deprivation of the defendant's right to a fair trial renders the outcome of the trial unreliable.

We noted earlier that the letters written by Drs. Crowley and Smail were reliable evidence which created a reason to doubt Johnson's competency to stand trial. Had these letters been introduced into court, the trial court would have been required to hold a competency hearing. *See* sec. 971.14, Stats. Thus Johnson has shown that Kagan-Kans' failure to bring these letters to the court's attention was so serious as to deprive Johnson of a fair trial, a trial whose result is reliable.

Having determined that Kagan-Kans' conduct constituted deficient performance which prejudiced Johnson's defense, we hold that Johnson was denied his sixth amendment right to effective assistance of counsel. Because we have concluded that the defendant was denied his sixth amendment guarantee to effective assistance of counsel under the test set forth in *Strickland v. Washington*, we need not analyze the claim under the state constitution to protect the defendant's rights.

We must now determine whether Johnson is entitled to a new trial or a nunc pro tunc hearing. It is recognized that a retrospective determination of an accused's competency to stand trial is inherently difficult. *Pate*, 383 U.S. at 387; *Drope*, 420 U.S. at 183; *Dusky v. United States*, 362 U.S. 402, 403 (1960). How-

ever, "[a]lthough there are obvious hazards attendant with retrospective competency hearings, . . . the mere passage of time may not make the effort meaningless. 'The passage of even a considerable amount of time may not be an insurmountable obstacle if there is sufficient evidence in the record derived from knowledge contemporaneous to trial.'" *United States ex rel. Bilyew v. Franzen*, 686 F. 2d 1238, 1246-47 (7th Cir. 1982) (citations omitted). In this case, two experts who examined Johnson prior to trial are available to testify at a competency hearing. The state and Johnson will have the opportunity at the hearing to examine the two experts and to bring in additional experts to analyze Johnson's competency based on the two experts' notes and the trial transcript. Although three or four years will have passed since trial, a meaningful retrospective hearing may be possible by analyzing the pertinent legal and medical records, in combination with a current medical evaluation, to produce a hindsight picture of Johnson's competency at the time of trial.

■■■

We note that, despite Johnson's claim of privilege at the August 15, 1984, postconviction hearing, Drs. Crowley and Smail should be permitted to testify at Johnson's competency hearing. Under sec. 905.11, Stats., "[a] person upon whom this chapter confers a privilege against disclosure of the confidential matter or communication waives the privilege if he . . . voluntarily discloses or consents to disclosure of any significant part of the matter or communication." At the August 15 hearing, Johnson entered into evidence two letters written by Drs. Crowley and Smail which indicated their concerns regarding Johnson's competency and the basis for those concerns. By entering these letters into evi-

dence, Johnson voluntarily disclosed a significant part of his confidential communication with Drs. Crowley and Smail. Because we find that Johnson waived his physician-client privilege by introducing these letters into evidence, we hold that Drs. Crowley and Smail cannot be barred from testifying at Johnson's competency hearing.

The state's approach to the question of privilege involves circumstances controlled by secs. 905.11 and 905.04(4)(c), Stats. Although we find sec. 905.11 dispositive because of the introduction of the letters, we note that the introduction of the *issue* of competency, by itself, may waive the privilege under sec. 905.04(4)(c). Because sec. 905.11 is dispositive, we do not address the question of whether sec. 905.04(4)(c) would prohibit Johnson from claiming the physician-client privilege. However, we note that sec. 905.04(4)(c) was patterned after proposed Federal Rule of Evidence 504(d)(3),[3] *see* Judicial Council Committee's Note, Wisconsin Rules of Evidence, 59 Wis. 2d R121, R128 (1973), and that the Federal Advisory Committee's Note to proposed rule 504(d)(3) states: "By injecting his condition into litigation, the patient must be said to waive the privilege, in fairness and to avoid abuses." 56 F.R.D. 183, 244 (1973).

We remand this case to the circuit court to first determine whether an adequate and meaningful nunc pro tunc inquiry can be made into the question of whether Johnson was incompetent at any time during the trial. If the circuit court concludes that a meaningful inquiry can be held, the circuit court must then hold a competency hearing. The competency hearing may be

---

[3] Proposed Federal Rule of Evidence 504(d)(3) was not adopted by the United States Supreme Court.

held as part of a multipurpose hearing designed to first determine whether a meaningful inquiry can be held.

If the circuit court finds that a meaningful hearing cannot be held, or if it finds that Johnson was incompetent during trial, then Johnson must be granted a new trial.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for proceedings consistent with this opinion.