SHIRLEY S. ABRAHAMSON, J.
¶ 64. (dissenting). At issue in this case is what standard of review an appellate court applies in reviewing a circuit court's retrospective evaluation at a postconviction hearing of a criminal defendant's competency to stand trial.
¶ 65. The majority opinion sets forth the facts and procedural history of the instant case at length. To clarify the procedural history of the instant case, I have included as Attachment A an outline of the relevant procedural history.
*520 ¶ 66. The majority opinion, the court of appeals, and I agree that the "clearly erroneous" standard of review applies to a circuit court's retrospective evaluation of a criminal defendant's competency to stand trial. Two cases apply this standard of review to a circuit court's evaluation of a defendant's competency to stand trial: State v. Byrge, 2000 WI 101, ¶ 4, 237 Wis. 2d 197, 614 N.W.2d 477; and State v. Garfoot, 207 Wis. 2d 214, 216-17, 558 N.W.2d 626 (1997).[1]
f 67. The difference between the court of appeals opinion and the majority opinion revolves around the formulation of the "clearly erroneous" standard. The court of appeals correctly stated: "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[2]
¶ 68. This formulation of the "clearly erroneous" standard and a closely related formulation stating that *521 findings of fact are clearly erroneous when " 'they are against the great weight and clear preponderance of the evidence'" are deeply rooted in Wisconsin law and are applied in a variety of contexts. See Hon. Kitty Brennan, Standards of Appellate Review, § VLA.l.a., in Michael S. Heffernan, Appellate Practice and Procedure in Wisconsin (6th ed. 2015) (citing cases).
¶ 69. The court has applied the "great weight and clear preponderance" formulation in, for example, Phelps v. Physicians Insurance Co., 2009 WI 74, f 39, 319 Wis. 2d 1, 768 N.W.2d 615, a tort case authored by Justice Roggensack; State v. Arias, 2008 WI 84, ¶ 12, 311 Wis. 2d 358, 752 N.W.2d 748, a Fourth Amendment search and seizure case also authored by Justice Roggensack; and J.A.L. v. State, 162 Wis. 2d 940, 966, 471 N.W.2d 493 (1991), a case reviewing a juvenile court's determination of mental illness under Wis. Stat. § 48.18(5) (1989-90).
f 70. Nonetheless, the majority opinion, without the support of briefs or oral argument by either the State or the defendant regarding the formulation of the "clearly erroneous" standard, breaks new ground, while pretending to apply precedent. The majority opinion sets forth a new articulation of the "clearly erroneous" standard. It explains that our review of a circuit court's finding regarding an accused's competency to stand trial "is limited to whether that finding is totally unsupported by facts in the record and, therefore, is clearly erroneous."[3]
¶ 71. I write separately to make two points.
*522 ¶ 72. First, the majority opinion's "totally unsupported by the facts" formulation of the "clearly erroneous" standard was first referenced in the competency to stand trial context in State v. Garfoot, 207 Wis. 2d 214, 224, 558 N.W.2d 626 (1997). This standard is derived from a distinct context — a circuit court's determination of a defendant's competency to defend him or herself pro se. Since Garfoot, this court has not applied the "totally unsupported by the facts" standard in reviewing a circuit court's determination of a defendant's competency to stand trial.
¶ 73. Moreover, not only is the majority opinion's formulation of "clearly erroneous" inconsistent with other cases articulating the "clearly erroneous" standard of review, but the majority opinion also grants far too much deference to a postconviction circuit court's retrospective competency determinations. A postcon-viction court conducting a retrospective competency determination, unlike the trial court, does not have the opportunity to observe the defendant at trial.
¶ 74. Accordingly, I would adhere to our existing, well-settled articulations of the "clearly erroneous" standard in reviewing the postconviction court's evaluation of Smith's competency to stand trial.
f 75. Second, applying the accepted formulations of the "clearly erroneous" standard of review to the facts of the instant case, I am left with a "definite and firm conviction" that the postconviction court made a mistake in finding the defendant, Smith, competent to stand trial. The postconviction court's conclusion is contrary to the "great weight and clear preponderance of the evidence."
*523 ¶ 76. As a result, I would affirm the court of appeals and remand the matter to the circuit court to vacate Smith's conviction and sentence and order a new trial.
¶ 77. For these reasons, I dissent and write separately.
( — I
¶ 78. I start with the basics. Trial of an incompetent criminal defendant deprives the defendant of his or her due process right to a fair trial and violates state law. See Wis. Stat. § 971.13(1);[4] State v. Byrge, 2000 WI 101, ¶¶ 27-28, 237 Wis. 2d 197, 614 N.W.2d 477. A challenge to competency to stand trial cannot be waived. State v. Johnson, 133 Wis. 2d 207, 218 n.1, 395 N.W.2d 176 (1986).
¶ 79. Although the majority opinion purports to apply the "clearly erroneous" standard adopted in Garfoot and Byrge in reviewing the postconviction court's determination of Smith's competency to stand trial,[5] the majority opinion verbalizes a new articulation of " clearly erroneous": A competency determination is "clearly erroneous," states the majority opinion, if it is "totally unsupported by facts in the record."[6]
¶ 80. This articulation of the "clearly erroneous" standard is significantly flawed.
*524 f 81. First, the majority opinion relies on Garfoot as the source of its articulation of the "clearly erroneous" standard. This reliance is misguided.
¶ 82. Garfoot invoked the "totally unsupported" language from Pickens v. State, 96 Wis. 2d 549, 292 N.W.2d 601 (1980), a very different case than Garfoot, Byrge, or the instant case.
¶ 83. In Pickens, the court reviewed a trial judge's determination of an accused's competency to represent himself at trial. Pickens was not a competence to stand trial case. Rather, the issue in Pickens was the defendant's competence to represent himself at trial.[7] Competence to represent oneself at trial and competence to stand trial are distinct inquiries.[8]
¶ 84. The Pickens court held that whether the accused "is or is not competent to represent himself will be upheld unless totally unsupported by the facts apparent in the record." Pickens, 96 Wis. 2d at 570. Pickens offered no citation or authority supporting its formulation of the standard of review.
¶ 85. Although the Garfoot court stated that the Pickens standard is "essentially a 'clearly erroneous' standard of review," and that "the same deference should be given to the trial court regarding determinations of competence to stand trial as is given for determinations of competence to represent oneself,"[9] this court has not applied the Pickens formulation in cases addressing the issue of a defendant's competence to stand trial since Garfoot.
¶ 86. For instance, in Byrge, a competence to stand trial case that followed soon after Garfoot, the *525 court did not apply the Pickens "totally unsupported by the facts apparent in the record" standard.[10]
¶ 87. In sum, the formulation — "totally unsupported by the facts apparent in the record" — derived from Pickens is applied almost exclusively in cases addressing a defendant's competency to defend him or herself at trial.[11]
¶ 88. One unsupported sentence in Gar foot, taken out of context, is the majority opinion's sole support for its formulation of the "clearly erroneous" standard.
¶ 89. Second, as I stated previously, the majority opinion's "totally unsupported by facts in the record" formulation of the "clearly erroneous" standard is *526 inconsistent with numerous Wisconsin cases that apply the "clearly erroneous" standard.
¶ 90. Numerous Wisconsin cases conclude that a finding of fact is clearly erroneous when "it is against the great weight and clear preponderance of the evidence." See, e.g., Phelps v. Phys. Ins. Co., 2009 WI 74, ¶ 39, 319 Wis. 2d 1, 768 N.W.2d 615 (Roggensack, J., majority) (internal quotation marks omitted) (reviewing a trial court's determination regarding the employment status of a medical resident under this formulation of the "clearly erroneous" standard); State v. Arias, 2008 WI 84, ¶ 12, 311 Wis. 2d 358, 752 N.W.2d 748 (Roggensack, J., majority) (reviewing circuit court findings of fact regarding a search and seizure); J.A.L. v. State, 162 Wis. 2d 940, 966, 471 N.W.2d 493 (1991) (reviewing a juvenile court's determination of mental illness under Wis. Stat. § 48.18(5) (1989-90)).
¶ 91. These cases demonstrate that a finding of fact may be clearly erroneous even when there is evidence to support the finding.
¶ 92. Third, the United States Supreme Court has analyzed the "clearly erroneous" standard. It has adopted in United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948), a similar formulation of the "clearly erroneous" standard that Wisconsin case law has adopted and that I espouse in this dissent.
¶ 93. The United States Supreme Court stated: "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Gypsum, 333 U.S. at 395 (footnotes omitted).
¶ 94. The Gypsum Court relied on Federal Rule of Civil Procedure 52(a), which provides that reviewing courts must not overturn factual findings unless *527 clearly erroneous and must give due regard to the opportunity of the trial court to assess witness credibility.
¶ 95. Federal Rule of Civil Procedure 52(a) is nearly identical to Wis. Stat. § 805.17(2), which provides in relevant part: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."
¶ 96. Given the similarities between Federal Rule of Civil Procedure 52(a) and Wis. Stat. § 805.17(2), a United States Supreme Court case, such as Gypsum, interpreting the "clearly erroneous" standard is instructive. See Rao v. WMA Secs., Inc., 2008 WI 73, ¶ 47, 310 Wis. 2d 623, 752 N.W.2d 220 ("Because the Wisconsin rules . . . mirror the federal rules, federal law is also instructive in interpreting the Wisconsin rules.").
¶ 97. Under United States Supreme Court (and Wisconsin) precedent, a finding of fact is clearly erroneous even when there is evidence to support the finding, if an appellate court "on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[12]
¶ 98. Fourth and finally, both Garfoot and Byrge dealt with evaluations of competency to stand trial made prior to trial.[13] These fact situations justify greater deference to trial court findings regarding a defendant's competency to stand trial than is justified when a postconviction court (different than the trial *528 court) conducts a retrospective evaluation of a defendant's competency to stand trial.
¶ 99. As the court of appeals noted in the instant case, in Garfoot and Byrge this court contended that deference to the circuit court's competency determination was warranted because the trial court had superior ability to observe the defendant and appraise witness credibility and demeanor.[14] These considerations are absent or significantly weaker when a postconviction court (different than the trial court) conducts a retrospective evaluation of a defendant's competency to stand trial.[15]
¶ 100. In sum, the majority opinion's conclusion that a circuit court's finding regarding a defendant's competency to stand trial should be upheld so long as it is not "totally unsupported" by facts in the record does not comport with Wisconsin or United States Supreme Court precedent, and is an unreasonable interpretation of the "clearly erroneous" standard of review. According to the majority opinion, a circuit court's determination of competency to stand trial would survive appeal even in the face of overwhelming contrary evidence and even in circumstances such as those in the present case in which the postconviction court stands in little better position than an appellate *529 court in determining the defendant's competency at a point in time several years prior.
¶ 101. Accordingly, I disagree with the majority opinion's formulation of the "clearly erroneous" standard of review. I conclude that a circuit court's retrospective determination of a defendant's competency to stand trial is clearly erroneous when, "although there is evidence to support [the circuit court's conclusion], the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed," or when the postconviction court's finding is contrary to the "great weight or clear preponderance of the evidence."[16]
II
¶ 102. I conclude, as did the court of appeals, that the postconviction court erred as a matter of law in finding that Smith was competent to stand trial.[17]
¶ 103. The postconviction court reached its decision based on two errors of law:
(1) The postconviction court was skeptical of retrospective competency determinations. Yet retrospective competency evaluations are well-established in Wisconsin law.
(2) The postconviction court did not consider the medical evidence presented by the medical experts. The postconviction court seemed to rely solely on the testimony of Smith's trial counsel.
*530 (1)
¶ 104. The postconviction court erred as a matter of law by being skeptical of retrospective competency determinations.
¶ 105. Even before hearing the evidence regarding Smith's competency to stand trial, the postconviction court expressed skepticism toward retrospective evaluations of a defendant's competency to stand trial, stating: "To say someone — if this opens a door, you can [retrospectively challenge trial competency] [i]n every case then. Defense can do this on every case. Come back and challenge the defense attorney at the time, say he or she didn't raise competency two years later. Oh, now find a doctor."
¶ 106. Similarly, even before hearing the testimony of the medical experts, the postconviction court was skeptical of the testimony, remarking that " [the medical expert is] making a decision based not which [sic] she's observing, not what she's seeing at the time, not what he is or is not perceiving, not his ability in an interview contemporaneous to the proceedings. She's going back two years."
¶ 107. Throughout the competency proceedings, the postconviction court dismissed even the possibility of a retrospective competency proceeding, let alone the idea that "a meaningful retrospective hearing may be possible by analyzing the pertinent legal and medical records, in combination with a current medical evaluation, to produce a hindsight picture of [the defendant's] competency at the time of trial." See State v. Johnson, 133 Wis. 2d 207, 225, 395 N.W.2d 176 (1986)
¶ 108. In sum, the transcript of the postconviction court's comments shows that the court believed that only the individuals "who were present" at the *531 time of trial can credibly assess the defendant's competency to stand trial. In effect, the postconviction court gave little weight to any testimony or medical expert report in the retrospective competency hearing.
¶ 109. The postconviction court's views of retrospective competency hearings do not accurately reflect Wisconsin law. Retrospective evaluation of a defendant's competency to stand trial is appropriate and well-established in our case law when a defendant's competency is questioned after a conviction at trial or the acceptance of a guilty plea. See Johnson, 133 Wis. 2d at 225; State v. Haskins, 139 Wis. 2d 257, 267, 407 N.W.2d 309 (Ct. App. 1987).
¶ 110. This court has observed that "the mere passage of time may not make [a retrospective competency hearing] meaningless," and "a meaningful. . . hearing may be possible by analyzing the pertinent legal and medical records, in combination with a current medical evaluation, to produce a hindsight picture of [the defendant's] competency at the time of trial." Johnson, 133 Wis. 2d at 225 (internal quotation marks omitted).
¶ 111. The majority opinion paints the postcon-viction court's evaluation of the court-appointed medical experts' testimony as an assessment of the court-appointed medical experts' credibility and states that the postconviction court is the only court able to evaluate credibility.[18]
*532 ¶ 112. The postconviction court said nothing that directly or indirectly challenged the credibility of these particular experts. The postconviction court praised both medical experts, extolling their experience, credentials, and ability.[19]
¶ 113. The only flaw the postconviction court identified in the medical experts' testimony was that the medical experts' conclusions were not supported by an interview of Smith at the time of trial and sentencing.
¶ 114. This flaw relates to the concept of retrospective competency evaluation and could have been said about any medical expert conducting a retrospective competency evaluation.
¶ 115. Rejection of the medical experts' testimony solely because it is not based on an interview of Smith at the time of trial and sentencing is inconsistent with Johnson, which clearly authorizes retrospective competency evaluations, including evaluation by medical experts. Thus, the postconviction court's evaluation of the record is contrary to law and the postconviction court's finding of fact regarding Smith's competency is based on an error of law.
*533 ¶ 116. In sum, the postconviction court's skepticism toward retrospective competency evaluations was an error of law that totally undermined the postcon-viction court's factual finding.
(2)
¶ 117. The postconviction court's approach to finding that Smith was competent to stand trial seems to have been that had Smith been incompetent to stand trial, the trial court, the State, and Smith's trial counsel would have raised the competency issue at the time of trial or sentencing. Because no one raised the issue at the time of trial or sentencing, the postconviction court reasoned that Smith was competent to stand trial.
¶ 118. This reasoning led the postconviction court to seemingly consider only the testimony of Smith's trial counsel.
¶ 119. The postconviction court explained its reliance on the trial court's failure to address the competency issue as the basis for its decision to find competence as follows:
The center of the defendant's argument is this: The people directly involved with the defendant during the trial and sentencing, his attorney and the presiding judge, failed to notice that the defendant was not competent. The evidence that proves their collective failure is the testimony of doctors who had no contact with the defendant during the trial or at sentencing. In other words, people who were not present at the relevant time know more than the people who were present.
¶ 120. In other words, because the issue of Smith's competency to stand trial was not raised or considered at the trial or at sentencing, the postcon- *534 viction court seemed convinced that Smith was obviously competent. According to the postconviction court, if Smith were incompetent, someone would have raised the issue at trial or sentencing.
¶ 121. This line of reasoning is misguided and is not borne out by the trial court record. The postconviction court failed to recognize that gaps existed in the trial court record and the information at Smith's trial counsel's disposal. Had the gaps been filled at trial or sentencing, the trial court, the State, or Smith's defense counsel might have had reason to doubt Smith's competency.
¶ 122. In the instant case, neither the circuit court judge, who presided at Smith's trial, nor the State's nor Smith's trial counsel raised questions regarding the defendant's competency to stand trial prior to or during the trial or sentencing. As a result, the circuit court had no reason to hold competency proceedings or appoint medical experts to assess the defendant's competence prior to or at the time of trial or sentencing. See Wis. Stat. § 971.14(lr)(a), (2)(a) (requiring competency proceedings and the appointment of medical examiners whenever "there is reason to doubt a defendant's competency to proceed").
¶ 123. In contrast with the limited record in the trial court regarding Smith's competence to stand trial, the medical experts had access to records that the trial court and trial counsel did not have.
¶ 124. The records upon which the medical experts relied demonstrate that Smith had a well-documented history of mental illness dating back to at least 1993, that he was previously diagnosed with either a "delusional disorder" or "schizophrenia," and that civil commitment proceedings were initiated *535 against him.[20] In the months leading up to conviction and sentencing, Smith's medical records showed he was acting strangely and exhibiting psychotic symptoms.[21]
¶ 125. During the same month as his trial, jail staff noted that Smith was " 'confusing past cases with current,' 'talking to himself,' and acting 'confrontational,' " and medical records showed Smith was rambling and out of touch with reality.[22]
¶ 126. After sentencing, Smith was described as "actively psychotic," refusing medication for diabetes because he feared that nursing staff would kill him with shots and by feeding him "whole foods."[23]
¶ 127. At sentencing, Smith was given an opportunity to speak in his own behalf. Smith's statement was rambling. It was largely irrelevant and incoherent. Unfortunately, neither the circuit court nor trial counsel for the State or Smith viewed Smith's allocution as raising any concern about Smith's competency. They let Smith speak and then ignored the possible implications of his behavior.
¶ 128. Neither the circuit court judge nor the State's trial counsel nor Smith's trial counsel were fully aware at the time of conviction and sentencing of the medical and jail records (later available to the medical experts).
¶ 129. The postconviction court failed to consider seriously these pertinent records. Instead, the postcon-viction court simply adopted the position of Smith's trial counsel that Smith was competent, and ignored *536 Smith's trial counsel's ignorance of the contents of records upon which the medical experts based their opinions. The postconviction court also seemingly ignored reasons to be skeptical of defense counsel's testimony.[24]
¶ 130. The majority opinion supports the post-conviction court's approach by pointing to two colloquies between Smith and the circuit court (namely Judge Conen, who presided over Smith's trial) as demonstrating Smith's competence.[25]
| 131. The colloquies are weak. The first colloquy (which occurred at the Miranda-Goodchild hearing), does not reveal very much about Smith's mental state. Smith responds to the circuit court's questions with only a "yes," "no," or "yeah." Smith's responses in the second colloquy (concerning his right to testify) are only slightly more developed.[26]
¶ 132. Colloquies resulting in simple answers are generally viewed as ineffective for determining the accused's mental state. The goal of a colloquy is to get the accused to speak in his or her own words so that *537 the accused's mental condition and understanding can be evaluated. One-word responses are not persuasive.[27]
¶ 133. At least one of the court-appointed medical experts stated that Smith's answers in the colloquies on which the majority opinion relies are not inconsistent with Smith "being sick and symptomatic at the same time [as the colloquies]."
¶ 134. Moreover, as two Wisconsin medical experts wrote in an article regarding retrospective competency evaluations: "Unfortunately [court] records will usually not reveal as much about a defendant's mental state as a focus []ed clinical evaluation, unless it was so disordered as to have been obvious to everyone involved in the process." Robert D. Miller & Edward J. Germain, The Retrospective Evaluation of Competency to Stand Trial, 11 Int'l J. L. & Psychiatry 113, 124 (1988).
¶ 135. Given the significant weight of the medical evaluations prepared by the two medical experts and the postconviction court's erroneous dismissal of this evidence, I conclude, as did the court of appeals, that the postconviction court's finding that Smith was competent to stand trial was an error of law.
¶ 136. Accordingly, I would affirm the decision of the court of appeals and remand the matter to the circuit court to vacate Smith's conviction and sentence and order a new trial.
¶ 137. For the reasons set forth, I dissent and write separately.
*538 ¶ 138. I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.
ATTACHMENT A: Procedural History
The relevant procedural history is as follows:
• On October 2, 2007, victim A.H. was beaten and raped.
• On January 7, 2009, Smith was charged with second-degree sexual assault of A.H.
• On October 12, 2009, a jury trial began before Judge Jeffrey A. Conen of Milwaukee County. Smith did not testify at trial.
• On October 14, 2009, the jury convicted Smith of second-degree sexual assault.
• On December 11, 2009, at the sentencing hearing, Smith gave a rambling and incoherent allocution. Judge Conen sentenced Smith to 25 years of initial confinement and 15 years of extended supervision.
• On June 18, 2010, Smith's postconviction counsel filed a motion for an evaluation of Smith's competency to assist in postconviction proceedings.
• On September 13, 2010, a competency hearing was held before Judge Jean DiMotto of Milwaukee County at which the defendant's medical expert, Dr. Deborah Collins, testified that Smith was not competent to proceed.
• On March 14, 2011, after a court-appointed medical expert, Dr. John Pankiewicz, concluded that Smith was incompetent to proceed and unlikely to regain competency within a reasonable period of time, Judge DiMotto found Smith *539 incompetent to assist in postconviction proceedings. A guardian ad litem was appointed for Smith.
• On September 30, 2011, Smith's postconviction counsel filed a motion to vacate Smith's conviction and sentence, alleging that Smith was incompetent at the time of trial and sentencing.
• The postconviction court, Judge David Borowski of Milwaukee County, ordered Drs. Collins and Pankiewicz to conduct a retrospective evaluation of Smith's competency at the time of trial and sentencing. A court-appointed medical expert and a medical expert selected by Smith reviewed records, including the prior psychiatric examinations of Smith, jail and medical records, and the transcripts of Smith's allocution.
• On August 2, 2012, Judge Borowski held a competency hearing at which both medical experts testified that Smith was incompetent at the time of trial and sentencing.
• On September 14, 2012, Judge Borowski continued the competency hearing, at which Smith's trial counsel testified that he had no reason to doubt Smith's competency to stand trial.
• On May 2, 2013, Judge Borowski denied Smith's motion to vacate his conviction and sentence and order a new trial, finding that Smith was competent to stand trial.

 In State v. Byrge, 2000 WI 101, 237 Wis. 2d 197, 614 N.W.2d 477, the court held that a circuit court's findings regarding competency to stand trial "will not be upset unless they are clearly erroneous because a competency hearing presents a unique category of inquiry in which the circuit court is in the best position to apply the law to the facts." Byrge, 237 Wis. 2d 197, ¶ 4.
In State v. Garfoot, 207 Wis. 2d 214, 558 N.W.2d 626 (1997), this court held that" [b]ecause the trial court is in the best position to observe the witnesses and the defendant and to weigh the credible evidence on both sides, appellate courts should only reverse .. . determinations [of competency to stand trial] when they are clearly erroneous." Garfoot, 207 Wis. 2d at 225.

 State v. Smith, 2014 WI App 98, ¶ 19, 357 Wis. 2d 582, 855 N.W.2d 422 (quotation omitted); see also Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1986) (quoting a virtually identical formulation of the "clearly erroneous" standard).

 Majority op., ¶ 29 (citing Byrge, 237 Wis. 2d 197, ¶ 33; Garfoot, 207 Wis. 2d at 224-25); see also majority op., ¶ 30 (" [RJetrospective determinations of competency . .. , too, are upheld unless totally unsupported by facts in the record and, therefore, clearly erroneous.") (citations omitted).

 Wisconsin Stat. §971.13(1) provides: "No person who lacks substantial mental capacity to understand the proceedings or assist in his or her own defense may be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures."

 See majority op., ¶ 26.

 Majority op., ¶ 29 (citing Garfoot, 207 Wis. 2d 214, 224) (emphasis added).

 See Pickens, 96 Wis. 2d at 568-69.

 See Pickens, 96 Wis. 2d at 567 ("[C]ompetency to stand trial is not the same as competency to proceed pro se . . . .").

 Garfoot, 207 Wis. 2d at 224-25.

 See generally Byrge, 237 Wis. 2d 197.

 For cases reviewing circuit court determinations regarding a defendant's competency to represent him or herself at trial under the Pickens formulation, see, for example, State v. Imani, 2010 WI 66, ¶ 19, 326 Wis. 2d 179, 786 N.W.2d 40; State v. Brown, No. 2015AP522-CR, unpublished slip op., ¶ 59 (Wis. Ct. App. Oct. 9, 2015); State v. Mason, No. 2013AP573-CR, unpublished slip op., ¶ 6 (Wis. Ct. App. Jan. 14, 2014); State v. Dehler, Nos. 2009AP1500-CR & 2009AP1501-CR, unpublished slip op., ¶ 16 (Wis. Ct. App. Aug. 10, 2010); State v. Ruszkiewicz, 2000 WI App 125, ¶ 38, 237 Wis. 2d 441, 613 N.W.2d 893.
The only cases I could find applying the "totally unsupported by the facts" Pickens formulation in reviewing determinations of a defendant's competency to stand trial or to assist in postconviction proceedings appear to be State v. Dorman, Nos. 2013AP782-86-CR, unpublished slip op., ¶ 5 (Wis. Ct. App. Aug. 21, 2014); State v. Colyer, No. 2012AP1090-CR, unpublished slip op., ¶ 6 (Wis. Ct. App. Aug. 27, 2013), and State v. Meeks, 2002 WI App 65, ¶ 10, 251 Wis. 2d 361, 643 N.W.2d 526, which was reversed on other grounds in State v. Meeks, 2003 WI 104, 263 Wis. 2d 794, 666 N.W.2d 859.

 United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948); see also Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1986) (quoting Gypsum, 333 U.S. at 395).

 See Garfoot, 207 Wis. 2d at 217; Byrge, 237 Wis. 2d 197, ¶ 13.

 See Byrge, 237 Wis. 2d 197, ¶ 75 ("[A] competency hearing presents a unique category of inquiry in which the circuit court is in the best position to appraise witness credibility and demeanor and therefore to apply the law to the facts."); Garfoot, 207 Wis. 2d at 225 ("Because the trial court is in the best position to observe the witnesses and the defendant and to weigh the credible evidence on both sides, appellate courts should only reverse such determinations when they are clearly erroneous.") (citing Wis. Stat. § 805.17(2)).

 Smith, 357 Wis. 2d 582, ¶ 23.

 Phelps v. Phys. Ins. Co., 2009 WI 74, ¶ 39, 319 Wis. 2d 1, 768 N.W.2d 615 (quotation omitted); Smith, 357 Wis. 2d 582, ¶ 19 (quotation omitted).

 Two judges presided at postconviction proceedings. This review is of Milwaukee County Judge David Borowski's finding of competency to stand trial.

 See majority op., ¶ 34 (" [T]he postconviction court was the only court in the position to weigh the evidence, assess credibility, and reach a determination regarding Smith's retrospective competency.").

 The postconviction court commented positively about the two testifying medical experts as follows:
"Dr. Collins is an absolute expert in the field; I have the utmost respect for her; she's testified multiple times .. .."
"Dr. Pankiewicz and Dr. Collins are very experienced doctors, and I've seen both of them testify. I read reports from both of the them. Dr. Pankiewicz said he's done I think 2000 evaluations.... and Dr. Collins, obviously, has done hundreds and hundreds of evaluations."

 See Smith, 357 Wis. 2d 582, ¶ 12.

 See id.

 See id.

 See id.

 As Robert D. Miller and Edward J. Germain wrote, " [d]efense attorneys cannot be considered as objective or uninvolved witnesses to the competency of their clients, either at the time of the original trial or at retrospective competency hearings." Robert D. Miller & Edward J. Germain, The Retrospective Evaluation of Competency to Stand Trial, 11 Int'l J. L. & Psychiatry 113,123 (1988). Defense counsel have an interest in not being found ineffective for failing to raise competency issues.
Miller and Germain also raise the question whether a trial judge's view of a defendant's competency may be questionable as well. See id. at 124.

 See majority op., ¶¶ 6-7.

 See id.

 See State v. Brown, 2006 WI 100, ¶ 58 n.27, 293 Wis. 2d 594, 716 N.W.2d 906 (discussing circumstances in which a colloquy should be expanded to ensure a defendant's understanding).