**Michael H. BLAKENEY, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 10–CO–1074, 11–CO–1436.**

District of Columbia Court of Appeals.

Argued Dec. 4, 2012.

Decided Oct. 3, 2013.

Michael A. DeBernardis, with whom Robert L. Shapiro, Kathleen M. Fones, and Elizabeth C. Solander, Washington, DC, were on the brief, for appellant.

Katherine M. Kelly, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, and Elizabeth Trosman and Kacie M. Weston, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN and BLACKBURNE–RIGSBY, Associate Judges, and FARRELL, Senior Judge.

GLICKMAN, Associate Judge:

Prior to appellant Michael Blakeney's first-degree murder trial, his defense attorneys arranged for a psychologist to evaluate his competency. The psychologist opined that Blakeney was not competent to stand trial. However, Blakeney's attorneys discounted the significance of that opinion and, after consulting with their client, chose not to raise the issue of his competency with the court. Blakeney proceeded to trial and was convicted of first-degree murder while armed and associated weapons offenses. He subsequently moved to vacate his convictions on Sixth Amendment ineffective assistance of counsel grounds, claiming that his attorneys were constitutionally ineffective in failing to raise the issue of his competency to stand trial.

The trial court held an evidentiary hearing on Blakeney's motion. After taking testimony from trial counsel and the psychologist who had evaluated him, the judge ruled that Blakeney was not entitled to relief. The judge reasoned that Blakeney was not prejudiced by his counsel's arguably deficient performance, because even if counsel had raised the issue before trial, there was no reasonable probability that Blakeney actually would have been found incompetent.

Blakeney noted an appeal. In addition, he moved in the trial court for reconsideration of his motion, proffering a second opinion of a psychiatrist that he indeed was incompetent at the time of his trial. In light of this proffer, the judge agreed to take further evidence and, at the request of the government, referred Blakeney to St. Elizabeths Hospital to have clinicians perform a retrospective evaluation of his competency. The hospital psychiatrist and psychologist who performed this evaluation concluded that Blakeney was competent to be tried at the time of his trial.

After a second evidentiary hearing, at which the psychiatrists testified to their conflicting conclusions, the judge retrospectively found that Blakeney was competent to stand trial. The judge therefore adhered to his earlier ruling that Blakeney was not entitled to relief because he could not show prejudice. In addition, deciding an issue he had left unresolved after the first hearing, the judge ruled that trial counsel's failure to raise the question of Blakeney's competency with the court prior to trial did not amount to constitutionally deficient performance, because the expert opinion counsel had obtained was outweighed by other, contrary information in their possession. Blakeney noted a second appeal, which we consolidated with his first.

Blakeney challenges both aspects of the trial court's decision. He contends his tri-

al counsel had more than enough information to require them to raise the issue of competency and urges us to adopt a bright-line rule that their failure to do so despite an uncontroverted expert opinion of incompetence amounted to constitutionally deficient performance as a matter of law. Blakeney further argues that he is entitled to a presumption of prejudice from counsel's unwarranted failure to raise the issue of competency, but that even without such a presumption, the evidence shows he was prejudiced by his attorneys' inaction.

We decline Blakeney's invitation to adopt a bright-line rule of deficient performance and a presumption of prejudice. We consider it a close question whether his attorneys were obligated to bring the issue of his competency to the court's attention prior to trial. Ultimately, however, we do not decide that question, because we affirm the trial court's ruling that Blakeney did not show he was prejudiced by his attorneys' putative error.

## I.

Blakeney was tried and convicted in April 2007 for the murder of Laurisa Ryland, who was shot to death while sitting in her minivan on the night of January 6, 2005. This court affirmed Blakeney's conviction on direct appeal.[1] In November 2009, while that appeal was pending, Blakeney filed a motion in Superior Court to vacate his convictions pursuant to D.C.Code § 23–110 (2013 Repl.). In that motion Blakeney charged that his trial attorneys, J. Christopher McKee and Samantha Buckingham of the Public Defender Service, had provided ineffective assistance of counsel by failing to alert the court to concerns about his competency.

Citing widely accepted standards promulgated by the American Bar Association, Blakeney argued that criminal defense attorneys have a duty to notify the court whenever they have a bona fide doubt as to the defendant's competency. Blakeney alleged that his counsel violated that duty when they remained silent despite having a clinical psychologist's opinion that he was incompetent, medical records showing his history of mental illness and attempts at suicide, and letters from him to his attorneys and the judge evincing paranoid and bizarre ideation. Blakeney claimed there was a reasonable probability that, had his attorneys informed the court of these facts, he would have been found incompetent to stand trial.

The government opposed the motion, arguing that Blakeney's attorneys did not have a good faith doubt as to his competency and therefore had no duty to raise the issue, and that there was no reasonable likelihood the court would have found Blakeney incompetent had the issue been raised before trial.

### A. The July 2010 Hearing

The trial court held an evidentiary hearing on Blakeney's § 23–110 motion in July 2010. Judge Kravitz, who had presided over Blakeney's trial, conducted the hearing. Three witnesses testified: defense attorneys McKee and Buckingham, and clinical psychologist Dwight Colley, who in 2006 had provided them with his opinion that Blakeney was incompetent. Blakeney's medical records and letters to counsel and the court also were placed in evidence.

Blakeney's medical records established that he had a history of mental illness

1. *Blakeney v. United States*, 07–CF–889, 985 A.2d 463 (D.C. Dec. 14, 2009) (memorandum opinion and judgment).

predating his arrest for Ryland's murder. He had been treated at St. Elizabeths Hospital and elsewhere and had been diagnosed as suffering from paranoid schizophrenia and other mental disorders.

Blakeney manifested symptoms of his mental illness when he was detained at the D.C. Jail following his arrest in this case. As a result, he spent much of his time in the Jail's Mental Health Unit. A series of mental health assessments by psychiatrists and other Jail medical personnel who examined him between January 2005 and December 2006 documented that Blakeney suffered from auditory hallucinations, delusions, paranoia, depression, and disordered thought processes. On two occasions during his first month in the Jail, Blakeney apparently attempted to commit suicide by taking overdoses of the antipsychotic medications he was prescribed. The Jail reports also note, however, that Blakeney responded well to the antipsychotic medications he was administered, though his compliance with the treatment regimen was uneven. Throughout his stay at the Jail, Blakeney exhibited a pattern in which his mental health problems alternately worsened and then improved.

While at the Jail, Blakeney wrote several letters to the court and to his defense attorneys. Some of these letters evinced his paranoia and mental instability. A letter in January 2006 to Judge Bayly (to whom the case was then assigned) began with the assertion that Blakeney was the "son of God" and the judge was "the devil." The letter went on to accuse the judge in florid terms of hiring agents to spy on him and other fantastic charges. A June 2006 letter to Buckingham complained that the FBI had implanted a chip in his body, hidden speakers in his cell, and so on. Blakeney wrote that Buckingham's cocounsel McKee "work[ed] for the devil" and was "with some kind of secret society

so we have to be careful about what we say to him and in front of him." On other occasions, though, Blakeney wrote lucid letters to his counsel, reporting that his medication was working and offering coherent and useful advice on his case.

In light of Blakeney's history of mental illness and the bizarre content of some of his letters, McKee and Buckingham engaged Dr. Dwight Colley in July 2006 to evaluate whether Blakeney was competent to stand trial or (as they suspected) was malingering. Dr. Colley reviewed Blakeney's medical records and correspondence and had a meeting with him at the Jail. The session lasted some two to three hours, after which Dr. Colley phoned Buckingham and orally reported to her that he thought Blakeney was *not* competent to stand trial.

Dr. Colley was not asked to prepare a written report of his findings and did not do so, and by the time of the § 23–110 hearing, he had lost his notes of the evaluation and had little recollection of the specific tests he had performed to assess Blakeney's competency. Buckingham's fragmentary notes of their telephone conversation constituted the only surviving documentation of the evaluation. According to those notes, Dr. Colley stated that Blakeney's short term memory was not functioning well, he could not take in information and retain it, and he had a "bizarre thought process." Dr. Colley told Buckingham he did not think Blakeney was faking, and that one of the tests, which involved matching numbers and symbols, suggested possible brain damage. Dr. Colley believed that because of his deficits, Blakeney "cannot cooperate with his defense."

Dr. Colley testified at the § 23–110 hearing that these conclusions were not preliminary or tentative, but rather represented his "full and final" evaluation; he

did not believe he needed more information or more time with Blakeney to conclude he was not competent to stand trial. Although, as he acknowledged, he had arrived at this firm conclusion without considering whether Blakeney's attorneys had found their client able to assist them in preparing his defense, Dr. Colley discounted the value of the attorneys' lay perceptions. In Dr. Colley's opinion, a defendant's apparent ability to have a "logical conversation" and cooperate with his attorney could be deceiving; an attorney might fail to appreciate, for example, that a defendant could "parrot something back" yet lack even a "basic understanding" of the recited information.

Notwithstanding Blakeney's history of mental illness, the manifestations of that illness in some of his letters, and Dr. Colley's report, McKee and Buckingham chose not to present the question of Blakeney's competency to the court. As the two defense attorneys testified, based on their own extensive interactions with Blakeney, they had no doubt of his competency; they attached little significance to Dr. Colley's contrary opinion, which they viewed as tentative and inconclusive; and Blakeney himself did not want them to raise an issue of his competency.

McKee explained that he and Buckingham (his "junior co-counsel") communicated with Blakeney frequently and met with him once a month or more throughout the pretrial period. Blakeney proved to be an "active participant" in pursuing his defense of misidentification and attacking the credibility of the government's witnesses. Indeed, McKee testified, in his thirteen years practicing law, Blakeney "was among the most involved, if not the most involved,

defendants ... in his case." Blakeney provided "very helpful" factual information, helped them identify and locate defense witnesses, and intelligently discussed with his attorneys the prosecution's evidence (e.g., cell phone records indicating his presence in the vicinity when Ryland was killed) and the legal issues in his case (e.g., Confrontation Clause questions). Blakeney did not appear to be delusional or irrational in these conversations.

McKee and Buckingham were well aware of Blakeney's mental illness. Blakeney spoke candidly with them about his mental problems and whether he was taking his antipsychotic medications. While some of Blakeney's letters had bizarre content, McKee found a "marked difference" between those letters and his personal interactions with Blakeney. McKee discussed the letters with Blakeney, who said they simply expressed how he felt at the moment he wrote them. But, McKee noted, Blakeney also wrote letters that were lucid, cogent, and helpful. Buckingham agreed with McKee's perceptions.

In light of their actual experience working with Blakeney, McKee and Buckingham had no doubt he was competent. Dr. Colley's evaluation did not shake their confidence in that assessment. McKee understood the evaluation to be preliminary in nature—merely that after a single meeting with Blakeney, Dr. Colley "believed he could render an opinion" that Blakeney was mentally ill and incompetent. But in McKee's view, Dr. Colley's evaluation omitted the necessary "contextual analysis" of Blakeney's actual, demonstrated ability to assist his attorneys with his defense.[2]

---

2. Curiously, McKee and Buckingham had no follow-up discussion with Dr. Colley about his evaluation. They never asked Dr. Colley about the apparent inconsistency between his opinion and their own experience working with Blakeney, nor did they request a second opinion from a different doctor.

After they received Dr. Colley's oral report, McKee and Buckingham discussed with Blakeney the pros and cons of making an issue of his competency. Blakeney indicated he had not been fully cooperative with Dr. Colley. He did not want to pursue the issue of his competency. McKee testified he took his client's wishes into consideration but did not consider them dispositive. He understood it was primarily up to counsel whether to raise the client's competency with the court, and he was familiar with the ABA standard under which counsel is obliged to do so if he has a good faith doubt about a client's competency to stand trial. Ultimately, though, because neither McKee nor Buckingham entertained any doubt as to Blakeney's competency despite Dr. Colley's opinion, they determined they would not raise the issue.

Blakeney's evidently rational participation in his defense continued after Dr. Colley's evaluation and through trial. Blakeney discussed with his attorneys the trial process, how to deal with certain witnesses, and whether he should testify. He gave relevant answers when his attorneys put him through a practice examination in preparation for the possibility of taking the stand at trial. His comments and questions during trial were, Buckingham testified, "spot on."

At the conclusion of the § 23–110 hearing, Judge Kravitz denied Blakeney's motion in an oral ruling. Applying the *Strickland*[3] standard for evaluating ineffective assistance of counsel claims, the judge discussed whether Blakeney had carried his burden to show (1) constitutionally deficient performance by his trial counsel and (2) prejudice as a result. As to the adequacy of counsel's performance, the parties agreed and Judge Kravitz accepted that, in accordance with ABA standards, a criminal defense lawyer is obligated to raise the issue of competency with the court whenever the lawyer has, or reasonably should have, a good faith doubt as to a client's competence to stand trial.[4] Blakeney argued that an unrebutted expert opinion *necessarily* establishes the requisite degree of doubt as to a defendant's competency, and that absent an expert opinion to the contrary, it is deficient performance *per se* for the defendant's lawyers to rely on their own views to override the expert's opinion. Moreover, Blakeney argued, where sufficient doubt exists as to the defendant's competency, the defendant himself cannot waive his right to have his competency determined by the court.

Judge Kravitz observed that the District of Columbia Court of Appeals had not addressed these propositions, but that this case stretched them to their "absolute outermost limits." Crediting "in full" the testimony of McKee and Buckingham, the judge found that their "extensive interactions with Mr. Blakeney over a period of more than two years ... provided overwhelming support for their belief that the defendant was fully competent to stand trial notwithstanding Dr. Colley's findings." Thus, the judge stated, but for the argument that a *per se* rule applies, he "readily" would conclude that McKee and

---

**3.** *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**4.** There also was no disagreement as to the legal standard for competency; as the judge stated, quoting *Drope v. Missouri*, 420 U.S. 162, 172, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), and *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), "[a] criminal defendant is competent to stand trial if he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational and factual understanding of the proceedings against him."

Buckingham had no duty to raise the issue of Blakeney's competency with the court.

The judge deemed it unnecessary, however, to decide whether a *per se* rule "trumped" his view of the evidence. Even assuming defense counsel should have advised the court prior to trial of Dr. Colley's findings, the judge concluded that their failure to do so did not prejudice Blakeney because—based on the totality of the evidence presented at the § 23–110 hearing—there was no reasonable probability the court would have found him incompetent. Dr. Colley's testimony did not satisfy Blakeney's burden to prove prejudice, the judge stated, "given its lack of specificity and the lack of any supporting details or documentation." On the contrary, the other testimony and evidence presented at the hearing convincingly established what the judge called Blakeney's "obvious competence to stand trial."[5] The judge pronounced himself "utterly convinced that [Blakeney] had a rational and factual understanding of the charges against him and of the court proceedings he was facing and that he was fully capable ... of consulting with his lawyers and actually assisting his lawyers in the preparation and presentation of his defense."

## B. The September 2011 Hearing

A month after the denial of his § 23–110 motion, Blakeney moved for reconsideration of the ruling. With his motion, Blakeney submitted the report of a psychiatrist, Dr. Brian Crowley, who had examined him following the July 2010 hearing and concluded he was not competent to stand trial in 2007. Judge Kravitz agreed to reopen the evidentiary hearing to receive additional evidence. At the government's request, the judge ordered Blakeney transferred to

St. Elizabeths Hospital for a retrospective competency evaluation. Blakeney was examined there from February to May 2011, a period of approximately three months. Thereafter, in September 2011, Judge Kravitz held a second evidentiary hearing, at which Blakeney called Dr. Crowley to testify and the government called Dr. Nicole Johnson, the psychiatrist in charge of Blakeney's evaluation at St. Elizabeths.

Dr. Crowley based his opinion on his review of Blakeney's medical history, the letters Blakeney wrote from the Jail, Dr. Colley's assessment, and his own interview of Blakeney at the Jail in August 2010. In the course of that interview, which lasted an hour and fifteen minutes, Dr. Crowley gave Blakeney a thirty-question test to measure his cognitive capacity. Blakeney's score on the test indicated that his cognitive functioning was significantly impaired. Dr. Crowley observed that Blakeney still suffered from delusions and had a distorted sense of reality—for instance, he truly believed that the FBI was "out to get him." Dr. Crowley noted that paranoid schizophrenia is "notoriously" resistant to medication. Whether the symptomatology associated with paranoid schizophrenia renders a defendant incompetent depends, said Dr. Crowley, on whether it "interpenetrate[s] [his] view of the court process, [his] ability to work with [his] lawyer and [his] ability to understand the process." Dr. Crowley cited Blakeney's letters as evidencing such interpenetration. Dr. Crowley had not talked to Blakeney's lawyers about his ability to work with them, however.

Dr. Johnson testified she had reviewed Blakeney's medical and Jail records, his correspondence, the pleadings relating to his § 23–110 motion, the transcript of the

---

**5.** Judge Kravitz also noted that his own memory of Blakeney's demeanor and participation

in his trial supported a finding of competency.

2010 evidentiary hearing on that motion, and the transcripts of his trial. In addition, she had communicated with McKee and Buckingham about Blakeney's letters and their ability to work with him.[6] During his stay at St. Elizabeths, Blakeney had daily interactions with the clinical staff, underwent neuropsychological and neurological testing,[7] and had three formal competency assessments conducted by Dr. Johnson and Dr. Teresa Grant, a psychologist. Blakeney also received "competency restoration training." Although Blakeney had not received such "training" to restore him to competency prior to his trial, Dr. Johnson testified that it did not invalidate her findings. Rather, Dr. Johnson explained that Blakeney's receptivity and capacity to benefit from competency restoration training at St. Elizabeths helped inform her retrospective competency determination, as it indicated the absence of any permanent organic brain impairment and Blakeney's capacity to absorb and make use of information provided by his lawyers in 2007.

Dr. Johnson concluded that although Blakeney suffered from mental illness and there were times when "his psychotic symptoms interfere[d] with his view of reality," he was competent to stand trial in 2007 and competent at the present time (i.e., in September 2011). Dr. Johnson noted that Blakeney's medical records showed a history of psychotic symptoms including "hearing voices, having paranoid delusions, being somewhat grandiose, being very resistant to taking medication and to even admitting that he has an illness." Yet, she observed, "he actually functions a

lot better than you would [expect] if you just saw him ... on paper and reviewed [his] documents and records." His competency evaluations at St. Elizabeths, which included questions about the legal process and his mental illness, showed that despite his impairments, he was able to understand, learn about, manipulate and retain information relating to his legal situation. If he could do that in 2011, Dr. Johnson opined, there was no reason he could not also do it in 2007. Moreover, Blakeney recalled and could recount detailed information from his trial and his pretrial preparation. Dr. Johnson also determined from reviewing Jail records and speaking with his attorneys that for several months preceding his trial, Blakeney was generally compliant in taking his medications and was not reporting or manifesting psychotic symptoms.

In addition, Blakeney's ability to work productively with his attorneys up to and through trial led Dr. Johnson to conclude that he was not feeling paranoid about them. Dr. Johnson had questioned Buckingham about Blakeney's June 2006 letter, in which he urged her to withhold information from McKee. This was an important subject because if Blakeney's illness caused him not to trust his attorney, then it did interfere with his competence to proceed in a criminal case. Buckingham told Dr. Johnson she had talked to Blakeney after getting the letter. Dr. Johnson learned that Buckingham had explained to Blakeney that she and McKee "worked as a team" and she could not keep anything from McKee that would help with Blake-

---

6. Dr. Johnson testified that she considered the factual information provided by the attorneys in reaching her own conclusions, but she took their comments about Blakeney's understanding of his legal situation "with a bit of skepticism" because they were not trained as mental health clinicians. "[S]o I can't just rely on

what they're saying ... to come to a conclusion about his competence in 2007," Dr. Johnson stated.

7. The test results were suggestive but ultimately inconclusive with respect to whether Blakeney had organic brain damage.

ney's defense; "[a]nd there [were] no problems after that with wanting to withhold information from Mr. McKee." · While Blakeney "continue[d] to present with vague paranoia concerns regarding the legal system," in Dr. Johnson's view they were not at "a level where it interfere[d] with his competency."

In an oral ruling following the hearing, Judge Kravitz denied the motion for reconsideration. Although the hearing had focused on the prejudice component of *Strickland*, the judge deemed it appropriate to revisit the question of deficient performance as well. Upon further consideration, the judge rejected the bright-line rule that Blakeney proposed, under which an unrebutted expert opinion of incompetency, such as Dr. Colley had furnished, necessarily obligates defense counsel to raise the issue of competency with the court.[8] Rather, in accordance with the ABA's "good faith doubt" standard, the judge concluded that "defense lawyers in the District of Columbia have the flexibility to weigh a mental health professional's opinion against the remainder of the available information," including the quality of the lawyers' own interactions with the client, "and to determine based on the unique facts and circumstances of a particular case that there is no good faith reason to doubt a client's competence."

The judge also squarely rejected Blakeney's alternative argument that "the combination of Dr. Colley's report, with other information known to the defendant's trial counsel, including the defendant's long history of mental illness, his odd letters to counsel and to Judge Bayly and his suicide attempts at the D.C. Jail," raised a good faith doubt as to Blakeney's competency. Elaborating on his prior findings, the judge found that McKee and Buckingham had thoroughly investigated Blakeney's mental illness and made "honest assessments" of his competency, not only by soliciting Dr. Colley's evaluation, but by studying Blakeney's medical records, conferring regularly with Blakeney about his mental condition, and probing whether his delusions were interfering with his understanding of the proceedings or his ability to assist them in preparing his defense.[9] Additionally, the judge found, defense counsel were "acutely aware" of Blakeney's preference not to raise the competency issue, and they "accommodated the defendant's preference because they firmly believed based on all they knew, including Dr. Colley's oral report, that the defendant understood the proceedings and how a competency challenge might play out and was fully competent to decide that he did not wish to make such a challenge." Under all the circumstances, the judge concluded, regardless of Dr. Colley's opinion, McKee and Buckingham "did not have a good faith doubt and should not have had a good faith doubt" as to Blakeney's competency. Consequently, Judge Kravitz ruled, there was no deficient performance on

---

8. "In certain limited circumstances," the judge observed,

> courts have concluded that bright line *per se* rules have benefits in terms of predictability and consistency in the law. In most circumstances, however, courts prefer fact-based inquiries in which the outcome in any given case is determined by the particular facts and circumstances presented.

9. "For example," the judge stated,

> the lawyers talked to the defendant about the letter to Judge Bayly and about the letter to Ms. Buckingham suggesting a lack of trust in Mr. McKee and each time trial counsel determined based on the discussions with the defendant that the defendant's occasional delusions were not interfering with his ability to consult with them in a rational manner and to help them in a very real way to prepare to confront the government's case at trial.

their part in failing to raise the issue with the court before trial.

In any event, the judge concluded, Blakeney did not succeed in showing he was prejudiced by any failure by counsel, because there was no reasonable probability the court would have found him incompetent had the issue been raised prior to trial in 2007. In view of the comprehensiveness of Dr. Johnson's three-month evaluation of Blakeney and her lack of bias, the judge found her opinion testimony "far more persuasive" than Dr. Crowley's. Based on the testimony of Dr. Johnson and of trial counsel, the Jail records showing Blakeney's compliance with his medication regimen in the months leading up to trial, and the absence of any evidence he was symptomatic in that period or during his trial, the judge found that Blakeney was competent to stand trial. And while the judge "recognize[d] that a mere retrospective finding of competence does not alone defeat a claim of prejudice under *Strickland* since the legal standards are different," he added that the government's showing was "so strong that [his] confidence in the outcome and in the fundamental fairness of the trial" had not been shaken by Dr. Colley's and Dr. Crowley's testimony. Considering all the evidence, Judge Kravitz declared himself "very comfortable ... that there is no significant risk that an incompetent man was tried and convicted in this case."

## II.

■ The basic principles governing our evaluation of Sixth Amendment ineffective assistance claims, competency determinations in criminal cases, and our review of the trial court's rulings are well-settled. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." [10] An ineffective assistance claim therefore has two components.

■ First, the defendant must show that counsel's performance was deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." [11] More specifically, the defendant's burden is to establish that "counsel's representation fell below an objective standard of reasonableness," as measured by reference to "prevailing professional norms." [12] This burden is not easily borne, given the "wide range of professionally competent assistance." [13] The defendant must overcome a strong presumption that counsel "made all significant decisions in the exercise of reasonable professional judgment." [14] "Judicial scrutiny of counsel's performance must be highly deferential." [15]

■ Second, the defendant must demonstrate that counsel's deficient performance prejudiced the defense by "depriv[ing] the defendant of a fair trial, a trial whose result is reliable." [16] We must ask "whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in

---

10. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

11. *Id.* at 687, 104 S.Ct. 2052.

12. *Id.* at 688, 104 S.Ct. 2052.

13. *Id.* at 690, 104 S.Ct. 2052.

14. *Id.*

15. *Id.* at 689, 104 S.Ct. 2052.

16. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

the adversarial process that our system counts on to produce just results." [17] To meet his burden, the defendant ordinarily must show there is "a reasonable probability that but for counsel's professional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." [18]

■ "[B]oth the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." [19] "On appeal, we accept the trial court's findings of fact unless they lack evidentiary support in the record." [20] Our review of the trial court's legal determinations, including its conclusions with respect to deficient performance and prejudice, is *de novo*. [21]

■ As to competency, it is incompatible with due process of law to prosecute a criminal defendant who is incompetent to stand trial. [22] "Competence to stand trial is rudimentary, for upon it depends the

main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so." [23] The test for determining competency to stand trial is whether a defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." [24] "Appellate review of a competency finding is deferential because the determination is 'primarily factual in nature.' " [25] We apply "the deferential abuse-of-discretion standard" in reviewing a court's determination to undertake a retrospective determination of a defendant's competency. [26]

## A. Deficient Performance

Although Blakeney suffered from mental illness and Dr. Colley opined he was

17. *Id.* at 696, 104 S.Ct. 2052.

18. *Id.* at 694, 104 S.Ct. 2052. Under this standard, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case.... The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Id.* at 693–94, 104 S.Ct. 2052.

19. *Id.* at 698, 104 S.Ct. 2052.

20. *Cosio v. United States,* 927 A.2d 1106, 1123 (D.C.2007) (en banc).

21. *Id.*

22. *Medina v. California,* 505 U.S. 437, 439, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992) ("It is well established that the Due Process Clause ... prohibits the criminal prosecution of a defendant who is not competent to stand trial.") (citing *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Pate v.*

*Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966)).

23. *Cooper v. Oklahoma,* 517 U.S. 348, 354, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996) (quoting *Riggins v. Nevada,* 504 U.S. 127, 139–140, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992) (Kennedy, J., concurring)).

24. *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); *Gorbey v. United States,* 54 A.3d 668, 678 (D.C.2012); *see also Hargraves v. United States,* 62 A.3d 107, 111 (D.C.2013) (quoting D.C.Code § 24–531.01(1) (2013 Repl.)).

25. *Hargraves,* 62 A.3d at 111 (quoting *Wallace v. United States,* 936 A.2d 757, 763 n. 11 (D.C.2007)); *cf. id.* at 122 (Newman, J., concurring) (competency determination should be reviewed as a mixed question of law and fact).

26. *Hooker v. United States,* 70 A.3d 1197, 1203 (D.C.2013).

incompetent to stand trial, his counsel refrained from raising the issue of his competency with the court or investigating it further for two reasons: They believed their client was competent based on their own interactions with him, and Blakeney did not want them to raise the issue. Blakeney now contends his counsel performed deficiently in failing to inform the court of Dr. Colley's unrebutted assessment. He primarily argues that a qualified mental health expert's uncontroverted opinion of incompetency requires defense counsel to bring the issue of the defendant's competence to the court's attention regardless of what counsel or the defendant may think. The government disagrees and argues that it was reasonable for Blakeney's counsel to discount Dr. Colley's opinion in light of their own first-hand experience working successfully with their client to prepare his defense. The trial judge agreed with the government.

■■■■ Ere now, decisions of this court have not squarely addressed when criminal defense counsel are obligated to raise the issue of their client's competency with the court. Because the trial of an incompetent defendant violates due process, it is clear that "resolution of the issue of competence to stand trial at an early date best serves both the interests of fairness and of sound judicial administration." [27] Trial counsel and the trial court each have important roles to play in ensuring that only competent defendants are tried. The trial court must hold a competency hearing *sua sponte* when it has sufficient grounds to doubt the defendant's competency.[28] But the court typically has only limited contact with criminal defendants; it is not in the best position to identify those in need of competency evaluations. Normally it is defense counsel who has the most exposure to the defendant's behavior and (prior to any expert evaluation) "the best-informed view of the defendant's ability to participate in his defense." [29] Counsel often may be the only actor who reasonably could become aware of competency issues.[30] Consequently, "the right not to be tried if incompetent ... should first be protected by counsel." [31]

■■■■ The test for determining when defense counsel is obligated to raise the issue of the defendant's competency with the court cannot be stated with precision. As the Supreme Court has observed, there are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed;

27. *Drope,* 420 U.S. at 177 n. 13, 95 S.Ct. 896 (internal citations omitted).

28. *See Phenis v. United States,* 909 A.2d 138, 152 (D.C.2006) ("Where there is evidence raising a substantial doubt as to a defendant's competency to stand trial, the trial judge is under a constitutional duty to order a hearing sua sponte.") (quoting *Holmes v. United States,* 407 A.2d 705, 706 (D.C.1979)); *see also Clyburn v. United States,* 381 A.2d 260, 263 (D.C.1977) ("Where, as here, no motion for commitment is made, the trial court is nevertheless obligated to make or compel inquiry if it is in receipt of information which raises a bona fide doubt of defendant's competence.") (citing *Pate,* 383 U.S. at 385, 86 S.Ct. 836).

29. *Medina v. California,* 505 U.S. 437, 450, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992).

30. *See, e.g., Bouchillon v. Collins,* 907 F.2d 589, 597 (5th Cir.1990) ("Where a condition may not be visible to a layman ... the defendant's attorney is the sole hope that it will be brought to the attention of the court."); *Drope,* 420 U.S. at 176–77, 95 S.Ct. 896 ("[J]udges must depend to some extent on counsel to bring [competency] issues into focus.").

31. *State v. Veale,* 158 N.H. 632, 972 A.2d 1009, 1018 (2009).

the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated." [32] That a defendant suffers from a severe mental disorder does not necessarily mean he is incompetent; the latter is a "much narrow-er concept." [33] To be sure, "[a]lthough no particular facts signal a defendant's incompetence, suggestive evidence includes the defendant's demeanor ..., irrational behavior of the defendant, and available medical evaluations of the defendant's competence to stand trial." [34] Yet manifestations of "[b]izarre and inappropriate" behavior may coexist with the functional abilities required for competency to stand trial.[35] Conversely, a defendant with a debilitating mental illness "may outwardly act logically and consistently but nonetheless be unable

to make decisions on the basis of a realistic evaluation of his own best interests." [36]

▮▮ The American Bar Association Criminal Justice Mental Health Standard that addresses the subject, Standard 7–4.2(c), states that defense counsel should bring the issue to the court's attention whenever counsel has "a good faith doubt as to the defendant's competence." [37] The parties and the trial judge in the present case relied upon this standard to evaluate the performance of Blakeney's trial counsel. While obviously not legally binding, relevant ABA Standards generally afford useful guidance as to what constitutes professionally reasonable performance of defense counsel,[38] and Standard 7–4.2(c) in particular has found widespread approval.[39]

32. *Drope*, 420 U.S. at 180, 95 S.Ct. 896.

33. *Eddmonds v. Peters*, 93 F.3d 1307, 1314 (7th Cir.1996); *see also* John Parry, *Criminal Mental Health and Disability Law, Evidence and Testimony* 61 (ABA 2009) ("No clinical diagnosis, by itself, can be relied on to make a determination of adjudicative incompetence. While defendants who are incompetent often have severe mental disorders, particularly schizophrenia, many still are competent to proceed with adjudication.").

34. *Williams v. Woodford*, 384 F.3d 567, 604 (9th Cir.2004) (citing *Drope*, 420 U.S. at 180, 95 S.Ct. 896).

35. *Phenis*, 909 A.2d at 152. "Even for those defendants who are experiencing symptoms of psychosis, the most that can be concluded, given the available literature in the area, is that the existence of such a symptom is likely to affect competence, but to what extent still needs to be measured on an individual basis in order to determine whether it surpasses the minimal threshold." Parry, *supra* note 33, at 296 (internal quotation marks and footnote omitted).

36. *Lafferty v. Cook*, 949 F.2d 1546, 1555 (10th Cir.1991).

37. ABA Criminal Justice Mental Health Standards (2d ed.1989) [hereinafter ABA Standards]. Standard 7–4.2(c) reads in full:

> Defense counsel should move for evaluation of the defendant's competence to stand trial whenever the defense counsel has a good faith doubt as to the defendant's competence. If the client objects to such a motion being made, counsel may move for evaluation over the client's objection. In any event, counsel should make known to the court and to the prosecutor those facts known to counsel which raise the good faith doubt of competence.

38. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

39. *See, e.g., Robidoux v. O'Brien*, 643 F.3d 334, 339 (1st Cir.2011); *Hummel v. Rosemeyer*, 564 F.3d 290, 298 (3d Cir.2009); *United States v. Boigegrain*, 155 F.3d 1181, 1188 (10th Cir.1998); *Smith v. Rock*, 554 F.Supp.2d 505, 521 (S.D.N.Y.2008); *People v. Masterson*, 8 Cal.4th 965, 35 Cal.Rptr.2d 679, 884 P.2d 136, 140 (1994); *Cappelli v. Demlow*, 935 P.2d 57, 62–63 (Colo.Ct.App.1996) (citing Standard 7–4.2 generally as consistent with Due Process); *Commonwealth v. Simpson*, 428 Mass. 646, 704 N.E.2d 1131, 1133 n. 1 (1999); *State v. Veale*, 158 N.H. 632, 972 A.2d 1009, 1015 (2009); *Wilcoxson v. State*, 22 S.W.3d 289, 305 (Tenn.Crim.App. 1999); *deShazer v. State*, 74 P.3d 1240, 1248–49 (Wyo.2003).

■ We think Standard 7-4.2(c) is helpful as far as it goes, but it does not go quite far enough for present purposes; for, in focusing only on counsel's subjective belief, it fails to set forth an objective standard of performance. Our task in deciding a claim of ineffective assistance is to determine whether counsel's performance was *"objectively* unreasonable." [40] The issue is not counsel's sincerity but the reasonableness, "considering all the circumstances," of counsel's challenged judgment "under prevailing professional norms." [41] Thus, in the present case, as the parties and the trial judge appreciated, the real question is not whether Blakeney's trial counsel *actually* had a good faith doubt about his competency, but whether they *should* have had sufficient doubt to require them to raise the issue. Standard 7-4.2(c) does not state explicitly when that threshold is met.

"No single, formulaic phrase" has garnered universal acceptance to describe "the quantum of doubt" that should compel counsel or the court to hold a competency hearing.[42] Somewhat indiscriminately, courts including our own have said that the doubt must be "bona fide," "substantial," "reasonable," or "sufficient," among other descriptors.[43] Yet "[t]he distinctions between these phrases are not trivial; some phrases suggest a much stricter constitutional standard than others." [44]

■ Given how much is at stake—due process for the defendant and the fundamental integrity of the judicial proceeding—and the imperative to investigate any issue of a defendant's competence in advance of trial rather than in a post-trial proceeding, several federal and state courts have adopted a "reasonable doubt" standard as the trigger for action.[45] We think this to be the best choice. It is

**40.** *Cosio v. United States,* 927 A.2d 1106, 1127 (D.C.2007) (en banc) (emphasis added); *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052.

**41.** *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052.

**42.** *Griffin v. Lockhart,* 935 F.2d 926, 929 n. 2 (8th Cir.1991).

**43.** *Id.* (citing cases).

**44.** *Id.*

**45.** *See, e.g., Jermyn v. Horn,* 266 F.3d 257, 300 (3d Cir.2001) ("Clearly, an attorney would render ineffective assistance of counsel if he or she failed to inquire into a defendant's competency and failed to request a competency hearing, despite indicia of incompetence that would provide reasonable counsel 'reason to doubt' the defendant's ability to understand the proceedings, communicate with counsel, and assist in his own defense."); *Kibert v. Peyton,* 383 F.2d 566, 569 (4th Cir. 1967) ("The protection afforded the defendant ... is illusory, however, if, when a reasonable doubt as to his sanity arises, neither court nor counsel seeks to utilize the procedures provid-

ed by the state for determining competency.... [T]he failure of the defendant's lawyer to explore the matter and adduce evidence in court where there was reason for doubt as to the mental condition of the accused, constituted a denial of his right to effective assistance of counsel."); *State v. Johnson,* 133 Wis.2d 207, 395 N.W.2d 176, 182 (1986) ("[W]here defense counsel has a reason to doubt the competency of his client to stand trial, he must raise the issue with the trial court. The failure to raise the issue of competency makes the counsel's representation 'fall below an objective standard of reasonableness.' "); *see also McMurtrey v. Ryan,* 539 F.3d 1112, 1125 (9th Cir.2008) (stating that a trial court must hold a hearing to determine whether the defendant is competent if the evidence before the court is "sufficient to raise a reasonable doubt" as to his competency); *Speedy v. Wyrick,* 748 F.2d 481, 484 (8th Cir.1984) (holding that where under the circumstances the evidence "raised a reasonable doubt as to competency," trial court should raise issue *sua sponte* ); *State v. Johnson,* 4 Neb.App. 776, 551 N.W.2d 742, 754 (1996) (where evidence during proceedings raises "reasonable doubt about [defendant's] incompetency" the court should hold an inquiry).

compatible with precedent from the Supreme Court and this court, and it has the virtues of being clearer and more objective than the alternatives, and of setting an appropriately low threshold for taking action.[46] Accordingly, we hold that criminal defense counsel must raise the issue of the defendant's competency with the court if, considering all the circumstances, objectively reasonable counsel would have reason to doubt the defendant's competency. Failure to do so is constitutionally deficient performance.

▮▮▮▮ Moreover, deference to the client's desire not to raise the issue of his competency does not justify or excuse such a failure. It is well-settled that counsel is obligated to raise the issue over the defendant's objections if reason exists to doubt the defendant's competency.[47] "[T]he due process violation inherent in and presumed from the trial of an incompetent defendant cannot be waived, if for no other reason than the incompetence itself."[48] As the Supreme Court has said, "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial."[49] Nor may counsel waive that right for the defendant for strategic reasons.[50] To the extent counsel perceives a conflict between raising competency and the defendant's best interests, counsel's "obligation to the court" to raise the issue must prevail.[51]

▮▮▮▮ Blakeney urges us to adopt a bright-line rule holding that an unrebutted expert opinion of a defendant's incompetency necessarily creates sufficient doubt to require defense counsel to bring the issue to the court's attention, so that it is necessarily deficient performance not to do

**46.** We appreciate that a low threshold increases the likelihood that defendants who are in fact competent will be required to undergo psychiatric evaluation, which may be objectionable to them. But this, we believe, is where the risk of error should be lodged, because it best ensures that incompetent defendants *will* be evaluated.

**47.** *See, e.g., United States v. Boigegrain,* 155 F.3d 1181, 1188 (10th Cir.1998) ("[T]he criminal lawyer's obligation to advocate the positions of his client is dependent on the client being mentally competent to stand trial. . . . [T]he defendant's lawyer is not only allowed to raise the competency issue, but, because of the importance of the prohibition on trying those who cannot understand proceedings against them, she has a professional duty to do so when appropriate."); *Bundy v. Dugger,* 816 F.2d 564, 566 n. 2 (11th Cir.1987) ("If defense counsel suspects that the defendant is unable to consult with him with a reasonable degree of rational understanding, he cannot blindly accept his client's demand that his competency not be challenged.") (internal quotation marks and citation omitted).

**48.** ABA Standards § 7–4.2 cmt., at 180.

**49.** *Pate v. Robinson,* 383 U.S. 375, 384, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *see also* *Medina v. California,* 505 U.S. 437, 450, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992) ("[I]t is impossible to say whether a defendant whose competence is in doubt has made a knowing and intelligent waiver of his right to a competency hearing.").

**50.** *Kibert v. Peyton,* 383 F.2d 566, 569 (4th Cir.1967); *In re Fleming,* 142 Wash.2d 853, 16 P.3d 610, 616–17 (2001); *State v. Johnson,* 133 Wis.2d 207, 395 N.W.2d 176, 182 n. 1, 183 (1986).

**51.** *See* ABA Standards § 7–4.2 cmt., at 181. "Raising the issue with the court" does not necessarily mean affirmatively moving the court to order an evaluation. As suggested by the commentary to Standard 7–4.2, should the defendant oppose such a motion, counsel may elect "simply to advise the trial court about the information that generated counsel's doubt about the client's competence." And in advising the court of that information, counsel also may adduce the countervailing evidence indicating that the defendant does have the requisite understanding of the proceedings and ability to assist in the preparation of his defense. *Id.* at 177.

so. Such a rigid rule would be inappropriate, however. "[A] medical opinion on the mental competency of an accused is usually persuasive evidence on the question of whether a sufficient doubt exists" to raise competency.[52] Courts have found counsel ineffective for disregarding such opinions.[53] We agree that, almost always, a qualified mental health expert's uncontroverted opinion will be quite enough to trigger a duty on the part of counsel to raise the issue of competency with the court, even when considerable other evidence indicates that the defendant is competent.[54]

But that need not be so in every case.[55] In exceptional cases, well-founded concerns about the basis and reliability of the opinion and compelling contrary evidence conceivably may dispel whatever force the expert's evaluation may possess.[56] Moreover, in principle the ineffective assistance inquiry requires us to take the totality of relevant circumstances into account in assessing the reasonableness of counsel's performance, and while we should not "slap the label of objective reasonableness on fanciful or unrealistic rationalizations for an attorney's conduct,"[57] we are obliged to "indulge a strong presumption" of reasonableness, recognizing that "[t]here are countless ways to provide effective assistance in any given case."[58]

Considering the somewhat unusual facts of this case, we think it a close question whether Dr. Colley's report should have led Blakeney's trial counsel to raise the

**52.** *Griffin v. Lockhart*, 935 F.2d 926, 930 (8th Cir.1991). Other courts have agreed. *E.g.*, *United States v. Mason*, 52 F.3d 1286, 1290 (4th Cir.1995); *State v. Johnson*, 4 Neb.App. 776, 551 N.W.2d 742, 751 (1996). Cf. *Baqleh v. Super. Ct.*, 100 Cal.App.4th 478, 122 Cal. Rptr.2d 673, 682 (2002) (noting that in a competency proceeding, expert opinion is "ordinarily the most credible and persuasive evidence as to that issue.") (quotation marks omitted).

**53.** *See, e.g., In re Fleming*, 142 Wash.2d 853, 16 P.3d 610, 616–17 (2001) (counsel's failure to raise competency in face of expert opinions of incompetence was ineffective assistance during guilty plea); *State v. Johnson*, 133 Wis.2d 207, 395 N.W.2d 176, 183 (1986) (failure to raise competency despite two experts expressing serious doubts constituted ineffective assistance of counsel).

**54.** Cf., *e.g., Sena v. N.M. State Prison*, 109 F.3d 652, 655 (10th Cir.1997) ("[O]nce doubt is raised, the court cannot dispel it simply by relying on contrary evidence.") (citing *Blazak v. Ricketts*, 1 F.3d 891, 898 (9th Cir.1993)); *People v. Burney*, 115 Cal.App.3d 497, 171 Cal.Rptr. 329, 331 (1981) ("However, a single doctor's report which concludes that the defendant is incapable of standing trial, even in the face of other reports to the contrary, is substantial evidence requiring that a [competency hearing] be instituted.").

**55.** In *Ryder v. State*, 83 P.3d 856, 876 (Okla. Crim.App.2004), for example, the court held that defense counsel was "not required to request a competency determination based solely upon the findings" in a psychological evaluation of the defendant, who "was apparently lucid and rational and did not give counsel any reason to question his competence to stand trial." Cf. *Gorbey v. United States*, 54 A.3d 668, 678 (D.C.2012) (stating that when a court is determining whether sufficient doubt exists to warrant a competency hearing, "factors such as a defendant's irrational behavior, demeanor at trial, prior medical opinions, evidence of mental illness, and representations by defense counsel are all relevant; courts must examine the totality of the circumstances: all evidence should be considered together, no single factor stands alone") (internal quotation marks omitted).

**56.** *See generally* Parry, *supra* note 33, at 307 ("Ultimately, the weight courts give to forensic evidence and testimony [regarding an opinion as to a defendant's competency] should depend on the totality of the information that is used to form that opinion.").

**57.** *Cosio v. United States*, 927 A.2d 1106, 1127 (D.C.2007) (en banc).

**58.** *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

issue of his competence with the court. Dr. Colley met with Blakeney only once, for just a few hours, and it is less than clear what testing he actually performed. Although McKee and Buckingham lacked the expertise to evaluate Dr. Colley's examination, they reasonably could take into account "the uncertainty of diagnosis in this field and the tentativeness of professional judgment" [59] and view Dr. Colley's opinion as preliminary and inconclusive. More important, trial counsel's actual experience working closely with Blakeney on his defense belied the conclusion that he was incompetent. McKee and Buckingham did not ignore that Blakeney suffered from paranoid schizophrenia and had written some bizarre and irrational letters, one of which evinced paranoid distrust of McKee. Yet as counsel described in detail, in their numerous personal interactions with Blakeney, he demonstrated an impressive ability to understand the legal proceedings and rationally assist them in preparing his defense. McKee and Buck-

ingham did not doubt that he was competent.

 It has been said that because competency is defined in terms of the defendant's "ability to consult *with his lawyer* and to understand the course of *legal* proceedings[,] counsel's first-hand evaluation of a defendant's ability to consult on his case and to understand the charges and proceedings against him may be as valuable as an expert psychiatric opinion on his competency." [60] But the point easily can be pushed too far. Attorneys are not trained to identify and evaluate the extent of mental impairments. They approach the issue with professional duties, biases, and motivations that sometimes make it difficult to weigh the evidence dispassionately and recognize or acknowledge that their clients may be incompetent.[61] Moreover, particularly in comparatively superficial encounters, "persons with severe mental conditions, such as brain damage and schizophrenia, can appear to be normal at times or may try to control or inhibit their

59. *Drope v. Missouri*, 420 U.S. 162, 176, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975) (quoting *Greenwood v. United States*, 350 U.S. 366, 375, 76 S.Ct. 410, 100 L.Ed. 412 (1956) (quotation marks omitted)). *See also* Parry, *supra* note 33, at 306 (noting that all psychological tests and measures of competency need to be placed "in their proper context, considering the various psychosocial factors that could affect test validity"; and that "[b]eyond deficiencies in the tests themselves, all such tests are subject to both an error range and different environmental factors that could affect performance, making clinical judgments and interpretation of results essential to understanding them").

60. *United States v. David*, 511 F.2d 355, 360 (D.C.Cir.1975). *See also Medina v. California*, 505 U.S. 437, 450, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992) ("[D]efense counsel will often have the best-informed view of the defendant's ability to participate in his defense."); Parry, *supra* note 33, at 301 ("Often, counsel is in the best position to understand the defendant's degree of impairment and ca-

pacities in light of the particular defense strategy that is to be employed.").

61. For one thing, ethical norms oblige a lawyer who represents a client with diminished capacity to strive "as far as reasonably possible" to "maintain a typical client-lawyer relationship with the client"—which is to say, a relationship "based on the assumption that the client, when properly advised and assisted, is capable of making decisions about important matters." D.C. Rules of Prof'l Conduct R. 1.14 & cmt. [1] (2007). The ethical duty to pursue a client's best interests with diligence and zeal, *see id.* R. 1.3, also may generate a conflict: As the commentary to ABA Standard 7–4.2(c) discusses, "[b]ecause of the sometimes severe consequences ... attendant upon a determination of incompetence, defense counsel may conclude that it is better for a technically incompetent defendant to proceed to trial." ABA Standards § 7–4.2 cmt., at 179. Yet as previously mentioned, this is not a choice counsel is free to pursue.

behaviors" and thereby mask the seriousness of their mental disabilities.[62] Apparent facility can be misleading: "That [the] defendant can recite the charges ..., list witnesses, and use legal terminology" is not enough to show competence, "for proper assistance in the defense requires an understanding that is rational as well as factual."[63] Thus, as the expert testimony in this case confirmed, counsel may misjudge a defendant's capabilities and miss or misapprehend clinically significant signs that a defendant is not genuinely competent. Clearly, therefore, defense counsel should not lightly disregard a credible medical opinion of incompetency, or indeed any other significant indicia thereof.

 The attorney-client relationship was far from a superficial one in this case, however, and Judge Kravitz, as the trier of fact, found counsel's testimony credible and compelling. We cannot second-guess the judge's factual assessments. Whether it follows that trial counsel had *no* sound reason even to doubt Blakeney's competency is another question. Because the reasonable-doubt threshold for requiring counsel to raise the issue of competency is designedly not difficult to reach, we cannot share the trial judge's certainty that it was not reached in this case. The facts remain that Blakeney was seriously mentally ill and unstable; he was less than fully cooperative in taking his anti-psychotic medication; he manifested paranoid and irrational thinking in regard to both his prosecution and his defense representation; *and* the only mental health expert who evaluated his competency opined that Blakeney was not malingering and was, or at least might well be, incompetent.[64] On these facts we lean to the conclusion that objective reasonable counsel would acknowledge the existence of a reasonable doubt as to Blakeney's competency, notwithstanding Blakeney's apparent ability to overcome his impairments and work with counsel intelligently and constructively.

That said, we reiterate that the question is a close one. And it is a question we need not finally decide, for as we proceed to discuss, we affirm the trial judge's determination that Blakeney was not prejudiced by counsel's failure to raise the issue of his competency.

## B. Prejudice

Along with other courts, we have held that to show prejudice from counsel's failure to raise the issue of competence to stand trial, the defendant must show there is a reasonable probability the trial court would have found him incompetent had the issue been raised.[65] Judge Kravitz ruled that Blakeney did not carry that burden. The judge based that ruling, ultimately, on a retrospective inquiry into Blakeney's competence at the time of trial.

---

62. Parry, *supra* note 33, at 301.

63. *United States v. Williams*, 113 F.3d 1155, 1160 (10th Cir.1997) (internal quotation marks omitted) (quoting *United States v. Hemsi*, 901 F.2d 293, 295 (2d Cir.1990)).

64. While defense counsel were of the view that Dr. Colley's examination of Blakeney was "preliminary" and incomplete, they sought no additional examination or testing and did not bring the facts of their own interactions with Blakeney to Dr. Colley's attention.

65. *Gorbey v. United States*, 54 A.3d 668, 689 n. 28 (D.C.2012) (citing *Jermyn v. Horn*, 266 F.3d 257, 283 (3d Cir.2001)); *accord Deere v. Cullen*, 718 F.3d 1124, 1126 (9th Cir.2013); *Warren v. Baenen*, 712 F.3d 1090, 1100 (7th Cir.2013); *Lawrence v. Sec'y, Fla. Dep't of Corr.*, 700 F.3d 464, 479 (11th Cir.2012); *United States v. Perry*, 495 Fed.Appx. 935, 937 (10th Cir.2012); *Ex Parte LaHood*, 401 S.W.3d 45, 54 (Tex.Crim.App.2013).

■ Blakeney argues that a reliable retrospective evaluation of his competency was not possible, and that he therefore is entitled to a presumption of prejudice. We agree that when it is infeasible to perform a reliable retrospective evaluation to resolve reasonable doubts as to a defendant's competency to stand trial, the continuing uncertainty undermines confidence in the trial enough to satisfy *Strickland's* requirement that the defendant show he was prejudiced by his trial counsel's deficient failure to raise the issue.[66] The question Blakeney raises, therefore, is whether the trial judge erred in concluding that a valid retrospective competency determination was possible in this case.

■ Because a defendant's competency may fluctuate over time—"[a] defendant may be competent to stand trial today, even though incompetent to assist in his defense six months ago"[67]—retrospective determinations often are inherently difficult.[68] Nonetheless, we have held that "[w]hile retrospective determinations of competency are not always appropriate,

their usefulness must be judged on a case by case basis...."[69] Whether a retrospective competency hearing is feasible is a mostly factual inquiry based on the nature of the defendant's alleged impairments and the availability and quality of the evidence bearing on his competency. Among the factors "considered in assessing whether a meaningful retrospective competency determination can be made consistent with a defendant's due process rights" are:

> (1) [t]he passage of time, (2) the availability of contemporaneous medical evidence, including medical records and prior competency determinations, (3) any statements by the defendant in the trial record, and (4) the availability of individuals and trial witnesses, both experts and non-experts, who were in a position to interact with defendant before and during trial.[70]

■ Judge Kravitz stated he was "very confident in making a retrospective finding of competence." It is true that some four years passed between Blakeney's trial and

66. The Supreme Court has reversed convictions even on plain error review for failure to hold a competency hearing when it deemed a retrospective competency determination impractical. *See Cooper v. Oklahoma*, 517 U.S. 348, 354 n. 4, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996) ("Indeed, the right not to stand trial while incompetent is sufficiently important to merit protection even if the defendant has failed to make a timely request for a competency determination.") (citing *Pate v. Robinson*, 383 U.S. 375, 384, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966)). The defendant's burden to show prejudice under *Strickland* is no greater than it is under plain error review. *E.g., Thomas v. United States*, 914 A.2d 1, 21 (D.C.2006) (holding that to establish prejudice in plain error context, appellant must show "a reasonable probability that [the error] had a prejudicial effect").

67. *United States v. Collins*, 430 F.3d 1260, 1267 (10th Cir.2005).

68. *See Drope v. Missouri*, 420 U.S. 162, 183, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975) (citing

*Pate*, 383 U.S. at 386–87, 86 S.Ct. 836; *Dusky v. United States*, 362 U.S. 402, 403, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)).

69. *Pierce v. United States*, 705 A.2d 1086, 1091 (D.C.1997); *see also McGregor v. Gibson*, 248 F.3d 946, 962 (10th Cir.2001) ("Retrospective competency hearings are generally disfavored but are permissible whenever a court can conduct a meaningful hearing to evaluate retrospectively the competency of the defendant.") (quotation marks omitted); *Walker v. Att'y Gen. of Okla.*, 167 F.3d 1339, 1347 n. 4 (10th Cir.1999) (collecting federal cases allowing retrospective competency hearings); *State v. Johnson*, 133 Wis.2d 207, 395 N.W.2d 176, 185 (1986) (remanding for lower court to assess whether under the circumstances of the case "a meaningful nunc pro tunc [competency] inquiry can be made").

70. *Collins*, 430 F.3d at 1267 (quoting *McGregor*, 248 F.3d at 962–63).

the hearing at which Dr. Johnson and Dr. Crowley testified. But the reasons for Blakeney's alleged incompetency were not transient ones, and neither mental health expert questioned the feasibility of making a valid retrospective assessment of Blakeney's competence to stand trial (though of course they differed in their opinions as to whether he was competent). Although Dr. Colley's notes of his pretrial competency examination of Blakeney were lost, Dr. Colley himself still was able to testify about his findings; moreover, Blakeney's mental health history was well-documented and Jail records shed light on his mental condition and treatment in the months leading up to his trial. Blakeney said little on the record at trial, but it is noteworthy that his behavior raised no apparent concern. The trial judge recalled no problems. The written correspondence in which Blakeney expressed himself, sometimes bizarrely, was available to be considered in the retrospective evaluation of his competency. Finally, in addition to Dr. Colley, McKee and Buckingham were able to describe Blakeney's interactions with them and their perceptions of his competence before and during trial. Considering all these factors, it appears there was ample (if not complete) contemporaneous material to support a valid retrospective competency evaluation by mental health experts. Judge Kravitz did not abuse his discretion in so finding.[71]

■ Further, while the issue was vigorously contested and the expert testimony was in conflict, the trial judge applied the correct legal standard and did not clearly err in finding that Blakeney was in fact competent to stand trial and so was not prejudiced by the failure to evaluate his competency at that time. The evidence before the court, including the testimony of Dr. Johnson and trial counsel, Blakeney's medical and Jail records, and the judge's own recollection of the trial, furnished more than adequate support for the judge's finding.[72] The judge gave fair consideration to the opposing opinions of Drs. Colley and Crowley, and it was within his discretion not to credit them in view of the weighty evidence to the contrary. There was no "wealth of evidence suggesting [Blakeney] was incompetent" that should have led the court to reject Dr. Johnson's opinion as a matter of law.[73] As we have said before, in affirming a retrospective determination that the defendant was competent to stand trial,

> Once there is some basis in the record for the judge's refusal to accept an expert's conclusion, we will not pit our judgment against that of the finder of fact who saw and heard the witness testify. Where, as here, the trial court was presented with . . . two permissible views of the evidence as to competency, the court's choice between them cannot

---

**71.** *See Walker,* 167 F.3d at 1347 n. 4 (holding that a retrospective competency evaluation held four years after the original trial was proper where the "trial judge who observed [appellant] in the criminal trial" also decided the competency issue after a hearing at which appellant's attorney, other attorneys, and a psychiatrist who examined him at the time of trial testified, since that constituted sufficient contemporaneous evidence for a proper decision).

**72.** In crediting Dr. Johnson's testimony, the judge fairly could accept her opinion that Blakeney's receipt of "competency restoration training" during his stay at St. Elizabeths did not invalidate her retrospective conclusion as to his competency to stand trial.

**73.** *Burt v. Uchtman,* 422 F.3d 557, 570 (7th Cir.2005) (granting habeas petition based on ineffective assistance of counsel where the state court had ignored strong evidence that defendant was in fact incompetent).

be deemed clearly erroneous.[74]

## III.

For the foregoing reasons, we affirm the judgment of the Superior Court denying appellant's motion to set aside his convictions on the ground of ineffective assistance of counsel.[75]

*So ordered.*

---

74. *Hooker v. United States,* 70 A.3d 1197, 1205 (D.C.2013)(internal quotation marks, brackets, and citations omitted).

75. The court commends appellant's *pro bono* counsel for their able discharge of their responsibilities in this matter.